STATE OF NORTH CAROLINA v. BRAXTON CHAVIS

STATE OF NORTH CAROLINA v. MRS. MARTIN BULLARD

STATE OF NORTH v. MARTIN BULLARD

STATE OF NORTH CAROLINA v. MRS. JOHN L. BARTON

STATE OF NORTH CAROLINA v. JOHN L. BARTON

STATE OF NORTH CAROLINA v. SANFORD BARTON

STATE OF NORTH CAROLINA v. JAMES G. OXENDINE

STATE OF NORTH CAROLINA v. MRS. JAMES G. OXENDINE

No. 7916SC602

(Filed 4 March 1980)

**Schools § 14— failure to send children to assigned schools—belief in exemption from assignment plan as American Indians**

In a prosecution of defendants for failing to cause their school-age children to attend the public school to which they had been assigned in violation of G.S. 115-166 and G.S. 115-176, the trial court properly refused to instruct the jury that it should return a verdict of not guilty if it found that defendants failed to

send their children to the assigned school because of their good faith belief that as American Indians they were exempt from school board attendance guidelines established at the direction of the Department of Health, Education and Welfare, since (1) the desegregation plan pursuant to which the school district lines were established affected Indians, as it affected all other county residents, as members of a racial group and, as a matter of law, they were equally subject to the plan's mandate, and (2) defendants' good faith belief in their exemption from the plan was based on a misunderstanding of the law and as such could furnish no defense in a prosecution for the offense charged because that offense did not require willfulness or any specific intent.

APPEAL by defendants from *Brannon, Judge.* Judgments entered 22 February 1979 in Superior Court, ROBESON County. Heard in the Court of Appeals 26 November 1979.

Defendants were tried and convicted in district court upon warrants charging them with violation of the compulsory school attendance law, G.S. 115-166 and G.S. 115-169, in having failed to cause their children to attend the school to which they were assigned on September 25, 26, 27, and 28, 1978. A trial *de novo* was held before a jury at the 19 February 1979 Session of Superior Court in Robeson County.

Prior to trial the State and the defendants stipulated that each of the defendants was the parent of a child or children between the ages of seven and sixteen years on 25 September 1978 through 28 September 1978. At trial the Superintendent for the Robeson County Board of Education testified that in 1970 the school board had established school district zones such that children living in a particular zone would attend school there. The zones were established under a plan ordered developed by the U.S. Department of Health, Education and Welfare. Prior to the 1978-1979 school year, defendants' children had been assigned to Prospect School in Robeson County, although as early as 1974 they should have been attending Oxendine School. In February 1978 the county school board adopted a new policy requiring that children attend school within the district in which their parents resided, the district lines being those established in 1970. When the school board discovered that under this policy, defendants' children should have been attending Oxendine rather than Prospect School, the parents were notified in person and by certified letter of the proper assignment. This occurred prior to the beginning of the 1978-1979 school year. Defendants informed the

superintendent that, as American Indians, they felt they had a constitutional right to send their children to the school of their choice. The school superintendent wrote the Department of Health, Education and Welfare and inquired whether an exemption could be granted on that basis. HEW replied that it could not because the Indians were equally subject to the desegregation process and that federal funding, which comprises approximately 10% of the money available for the schools in Robeson County, could be withheld if the county did not comply with desegregation plans.

Defendants' children arrived at Prospect School on the first day of class of the 1978-79 school year to attend school there. The defendant parents, who claim Indian heritage, contended that since Prospect School had historically been an Indian School and since the older brothers and sisters of the children had gone to Prospect School, they were entitled by virtue of being American Indians, to continue to send their children to Prospect School. The principal of Prospect School was directed by the school board not to provide instruction or books to the children, but he was informed that the children would remain in a place provided for them on school premises. Some school fees were mistakenly collected from some of defendants' children by Prospect School teachers, but refund checks were written for those fees. The State's evidence showed that defendants were concerned that their children be educated and that they had consistently caused their children to attend Prospect School even though the children were not receiving instruction there.

Defendants testified that they had no objection to Oxendine School, the school to which their children were assigned, but that they felt that the Civil Rights Act of 1964 was not applicable to Indians, and that it was their right to send their children to the school of their choice.

Defendants requested that the court instruct the jury that if defendants had "fail[ed] to send their children to the assigned school as the result of a good faith belief that as American Indians they are exempt from guidelines of the local School Board mandated by the Department of HEW, then you are to return a verdict of not guilty." This instruction was refused. As to each defendant-parent the jury returned a verdict of guilty of the of-

fense of failing to cause his school-age children to attend their assigned school. From judgments imposing suspended sentences of imprisonment, defendants appealed.

*Attorney General Edmisten by Kaye R. Webb, Associate Attorney, for the State.*

*Seawell, Pollock, Fullenweider, Robbins & May, P.A., by Bruce T. Cunningham, Jr. for defendant appellants.*

PARKER, Judge.

Defendants' sole assignment of error is directed to the trial court's refusal to instruct the jury that they should return a verdict of not guilty if they found that defendants failed to send their children to the assigned school because of their good faith belief that as American Indians they are exempt from school board attendance guidelines established at the direction of the Department of Health, Education and Welfare. We find no error in the refusal to give the tendered instruction.

G.S. 115-166 provides in pertinent part:

Every parent, guardian or other person in this State having charge or control of a child between the ages of seven and 16 years shall cause such child to attend school continuously for a period equal to the time which the public school to which the child is assigned shall be in session. No person shall encourage, entice or counsel any such child to be unlawfully absent from school.

G.S. 115-169 provides:

Any parent, guardian or other person violating the provisions of this Article shall be guilty of a misdemeanor and upon conviction shall be fined not more than fifty dollars ($50.00) or imprisoned not more than 30 days, or both, in the discretion of the cóurt.

G.S. 115-166 does not explicitly require the parent to cause his child to attend the public school to which he is assigned, but instead requires only that the parent cause his child to attend school "for a period equal to the time which the public school to which the child is assigned shall be in session." However, G.S. 115-166 must be read in *pari materia* with G.S. 115-176 which pro-

vides in part that "[n]o child shall be enrolled in or permitted to attend any public school other than the public school to which the child has been assigned by the appropriate board of education." Thus, unless a parent chooses to have his child attend an approved nonpublic school, he must cause him to attend the public school to which he is assigned.

The record discloses that defendants had ample notice prior to the beginning of the 1978-79 school year that their children were assigned to Oxendine School, and there is ample evidence that they willfully caused them to attend Prospect School. In light of this, the question presented is whether their good faith belief that as American Indians they are exempt from compliance with the school assignment plan adopted by the Robeson County Board of Education pursuant to the mandate of the Department of Health, Education and Welfare is a defense to the offense charged. As a matter of law, no such exemption exists. Although the American Indian tribes have been accorded a unique legal status by virtue of Art. I, § 8, cl. 3 of the Federal Constitution which empowers the Congress "To regulate commerce . . . with the Indian tribes," even if the defendants were members of a federally recognized tribe, which they concede they are not, the provisions of the Civil Rights Act of 1964 with respect to public school desegregation would apply no less to them. A distinction must be drawn between governmental requirements affecting the American Indian as a political classification and those affecting the American Indian as a racial classification. *See, Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L. Ed. 2d 290, n. 24 (1974). As one court has expressed it, laws or practices in the former category are "closely related to furthering the federally recognized interests of political sovereignty and tribal self-government and the classifications consequently depend on tribal membership or proximity to reservations." *Booker v. Special Sch. Dist. No. 1,* Minneapolis, 451 F. Supp. 659, 667 (D. Minn. 1978), aff'd 585 F. 2d 347 (8th Cir. 1978). Those in the latter category, however, are directed to a "racial" group consisting of "Indians," *Morton v. Mancari, supra,* and are to be judged no differently than other classifications based on race. In *Booker,* the United States district court held that a court-ordered desegregation plan which affected Indians not living on a reservation raised no question of the political status of Indians but, instead, affected them as a racial

group. Thus, the court concluded that any variance from the plan, even if intended to promote the special needs of Indian children not living on a reservation, would raise serious questions under the equal protection clause of the Federal Constitution. Similarly, the desegregation plan pursuant to which the school district lines were established in 1970 in the present case, insofar as it affects the defendants and the other Indians in Robeson County, affects them, as it affects all other county residents, as members of a racial group and, as a matter of law, they are equally subject to the plan's mandate.

Although the record supports the good faith of defendants' belief in their exemption from the plan, that belief was based on a mistake of law, and the general rule is that a mistake of law, however bona fide, is no defense to prosecution for an act which violates the criminal laws unless the offense includes the element of willfulness or requires specific criminal intent. 21 Am. Jur. 2d Criminal Law § 94, p. 176. The offense defined by G.S. 115-166 clearly does not require any specific intent, and this Court has previously held that willfulness is not an element of the offense. *State v. Vietto*, 38 N.C. App. 99, 247 S.E. 2d 298 (1978), reversed on other grounds, 297 N.C. 8, 252 S.E. 2d 732 (1979). Therefore, defendants' good faith belief, based as it was on a misunderstanding of the law, could furnish no defense in a prosecution for the offense charged. We note that the defense offered in this case is distinguishable from that presented in *State v. Miday*, 263 N.C. 747, 140 S.E. 2d 325 (1965). In that case, the defendant's child was refused admission to public school because he had not met the legal requirements for inoculation. The Supreme Court held that the defendants' good faith assertion of his perceived rights under a statute exempting children whose parents were bona fide members of a religious organization whose teachings opposed inoculation from having a certificate of inoculation for admission to school was a valid defense to a charge of violation of G.S. 115-166. In that case, the defense was provided by statute. In the present case, no defense, statutory or otherwise exists. The trial court properly refused to give the tendered instruction.

No error.

Chief Judge MORRIS and Judge HILL concur.