STATE OF NORTH CAROLINA v. JERRY LEE JONES

---

STATE OF NORTH CAROLINA v. TINA JONES

No. COA10-1202

(Filed 21 June 2011)

**1. Schools and Education— Compulsory Attendance Law— motion to dismiss—properly denied**

The trial court did not err in a case involving the violation of the Compulsory Attendance Law by denying defendants' motions to dismiss the charge for insufficient evidence. The State presented substantial evidence of each element of the offense, and therefore, the court properly submitted the charge against each defendant to the jury.

**2. Schools and Education— Compulsory Attendance Law— jury instruction—lack of good faith—not an element—no error**

The trial court did not commit error or plain error in its jury instructions in a case involving the violation of the Compulsory Attendance Law. There is no element requiring proof of lack of a good faith effort.

Appeal by defendants from judgments entered 26 May 2011 by Judge Laura J. Bridges in Buncombe County Superior Court. Heard in the Court of Appeals 13 April 2011.

*Attorney General Roy Cooper, by Assistant-Attorney General Brian R. Berman, for the State.*

*Guy J. Loranger for defendant-appellant Jerry Lee Jones.*

*Peter Wood for defendant-appellant Tina Jones.*

HUNTER, Robert C., Judge.

Defendants Jerry Lee Jones and Tina Jones appeal their convictions for failing to cause their daughter "P.J." to attend school, in violation of North Carolina's Compulsory Attendance Law ("CAL"), N.C. Gen. Stat. §§ 115C-378 to 383 (2009).[1] Defendants primarily contend that the trial court erred in denying their respective motions to dismiss the charge for insufficient evidence. We conclude, however, that the State presented substantial evidence of each element of the offense, and, therefore, the court properly submitted the charge against each defendant to the jury. Accordingly, we find no error.

Facts

The State's evidence at trial tended to establish the following facts: Mr. and Mrs. Jones are the biological parents of P.J. At the start of the 2008-09 school year, P.J. was 14 years old and entered the 9th grade at North Buncombe High School in the Buncombe County school system. After her family moved, P.J. transferred in September 2008 to T.C. Roberson High School, which is also in the Buncombe County school system.

On 17 November 2008, Rob Weinkle, T.C. Roberson's principal, sent defendants a letter notifying them that the school's attendance records showed that P.J. had accumulated three or more unexcused absences ("three-day letter"). The letter also advised defendants that they were "responsible for [their] child's school attendance" under CAL, that they may be "prosecuted in a criminal action if [their] child's unlawful absences continue[d]," and that they "should contact [their] child's counselor or administrator . . . to discuss this matter." Mr. Weinkle mailed an identical letter on 2 February 2009, notifying defendants that P.J. had accumulated six or more unexcused absences ("six-day letter").

On 3 February 2009, Mrs. Jones took P.J. to Access Family Services ("AFS"), a community support agency, for a clinical assess-

---

1. The juvenile's initials are used throughout this opinion to protect the juvenile's privacy.

ment. The assessment, performed by J.C. Cagle, diagnosed P.J. with "[c]onduct disorder with adolescent onset and intermittent explosive disorder." Lori Siemens, an AFS case manager, and Steven Luke, a mental health counselor, were assigned to work with P.J. and her family. Ms. Siemens was permitted to accompany P.J. to school on several occasions in order to observe her behavior and to help her "learn how to deal" with her anger and anxiety issues. Mr. Luke also discussed with a school administrator implementing a plan to "help [P.J.] cope in school[.]"

On 25 February 2009, after P.J. had accumulated 10 unexcused absences, Mr. Weinkle sent defendants a third letter informing them that they were in violation of CAL, that they could be prosecuted for the violation, and that a conference had been scheduled for 10 March 2009 to address P.J.'s lack of attendance ("10-day conference"). The 10-day conference was held on 13 March 2009 at T.C. Roberson; Mr. Jones, Mrs. Jones, P.J., and Ms. Siemens attended the conference as well as assistant principal Janet Greenhoe, drop-out specialist Jill Castelloe, at-risk counselor Anna Hubbell, and 9th grade counselor Natalie Anderson. During the conference, school administrators agreed to develop a new schedule for P.J., make accommodations for materials to be provided in her classrooms, set up a "time-out plan" for her, and recommend P.J. as a candidate for the "PASS program." Ultimately, P.J. accumulated 21 unexcused absences during the 2008-09 school year.

After the 10-day conference, defendants were charged with failure to cause attendance based on complaints filed by Mr. Weinkle on 18 March 2009. Defendants were initially tried and convicted in Buncombe County District Court. On appeal to Buncombe County Superior Court, defendants' cases were consolidated for a trial de novo. Defendants moved to dismiss their respective charges at trial and the court denied the motions. The jury found defendants guilty of violating the school attendance law and the trial court sentenced defendants each to 45 days in the Buncombe County jail, suspended the sentences, and imposed 18 months of supervised probation as well as a $500.00 fine. Both defendants timely appeal to this Court.

I

[1] Defendants first contend that the trial court erred in denying their motions to dismiss the charge for insufficient evidence.[2] A defend-

---

2. As Mr. and Mrs. Jones present identical arguments on appeal, we address them together.

ant's motion to dismiss should be denied if there is substantial evidence: (1) of each essential element of the offense charged and (2) of defendant's being the perpetrator of the offense. *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence" is that amount of relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 7879, 265 S.E.2d 164, 169 (1980). When considering the issue of substantial evidence, the trial court must view all of the evidence presented "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). "Whether [the] evidence presented constitutes substantial evidence is a question of law for the court[,]" *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991), "which this Court reviews *de novo*," *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007).

Defendants were charged with failing to cause attendance under N.C. Gen. Stat. § 115C-378, which provides in pertinent part:

(e) The principal or the principal's designee shall notify the parent, guardian, or custodian of his or her child's excessive absences after the child has accumulated three unexcused absences in a school year. After not more than six unexcused absences, the principal or the principal's designee shall notify the parent, guardian, or custodian by mail that he or she may be in violation of the Compulsory Attendance Law and may be prosecuted if the absences cannot be justified under the established attendance policies of the State and local boards of education. Once the parents are notified, the school attendance counselor shall work with the child and the child's family to analyze the causes of the absences and determine steps, including adjustment of the school program or obtaining supplemental services, to eliminate the problem. The attendance counselor may request that a law enforcement officer accompany him or her if the attendance counselor believes that a home visit is necessary.

(f) After 10 accumulated unexcused absences in a school year, the principal or the principal's designee shall review any report or investigation prepared under G.S. 115C-381 and shall confer with the student and the student's parent, guardian, or custodian, if possible, to determine whether the parent, guardian, or custodian has received notification pursuant to this section and made a

good faith effort to comply with the law. If the principal or the principal's designee determines that the parent, guardian, or custodian has not made a good faith effort to comply with the law, the principal shall notify the district attorney and the director of social services of the county where the child resides. If the principal or the principal's designee determines that the parent, guardian, or custodian has made a good faith effort to comply with the law, the principal may file a complaint with the juvenile court counselor pursuant to Chapter 7B of the General Statutes that the child is habitually absent from school without a valid excuse. Upon receiving notification by the principal or the principal's designee, the director of social services shall determine whether to undertake an investigation under G.S. 7B-302.

(g) Documentation that demonstrates that the parents, guardian, or custodian were notified and that the child has accumulated 10 absences which cannot be justified under the established attendance policies of the local board shall constitute prima facie evidence that the child's parent, guardian, or custodian is responsible for the absences.

N.C. Gen. Stat. § 115C-378(e)-(g).

This Court has held that "the procedures set forth in N.C. Gen. Stat. § 115C-378 requiring that the schools take certain steps prior to causing a warrant to be issued" establish the six "elements of the offense." *State v. Frady*, 195 N.C. App. 766, 769, 673 S.E.2d 751, 753 (2009). Thus, the elements of failure to cause attendance are: (1) that the defendant was a parent, guardian, or custodian of a school-age child; (2) that the child was enrolled in a North Carolina public school or an approved non-public school during the specified school year; (3) that the school's principal or the principal's designee notified the defendant of the child's absences from school after the child accumulated three unexcused absences during the specified school year; (4) that after not more than six unexcused absences, the defendant was notified by mail that he or she may be in violation of CAL and that he or she may be prosecuted if the absences cannot be justified under established school board policies; (5) that after the defendant has been notified, the school attendance counselor worked with or attempted to work with the child and the defendant to analyze the causes of the absences and determine steps to eliminate the problem; and (6) that during the specified school year, the child accumulated at least 10 unexcused absences, that the defendant was notified of the

10 unexcused absences, and that the 10 unexcused absences cannot be justified under established school board policies. N.C. Gen. Stat. § 115C-378(e)-(f); *Frady*, 195 N.C. App. at 768-69, 673 S.E.2d at 752-53.

Defendants argue that the State failed to present sufficient evidence of the fourth and fifth elements. With respect to the fourth element, defendants contend that P.J.'s school did not comply with N.C. Gen. Stat. § 115C-378(e)'s second notice requirement as "[t]he State's evidence showed that the school did not send the 'six-day letter' to P.J.'s home until after the child had already accumulated eight unexcused absences." The State argues that N.C. Gen. Stat. § 115C-378(e)'s notification-by-mail requirement applies only to notice of the parent's possible violation of and potential prosecution under CAL, not to notification of the child's sixth unexcused absence. We agree with the State's position.

The plain language of the statute provides in pertinent part: "After not more than six unexcused absences, the principal or the principal's designee shall notify the parent, guardian, or custodian by mail that *he or she may be in violation of the Compulsory Attendance Law and may be prosecuted if the absences cannot be justified* under the established attendance policies of the State and local boards of education." N.C. Gen. Stat. § 115C-378(e) (emphasis added). This provision does not mandate that the school provide written notice by mail of the child's sixth unexcused absence—it only requires the school to notify parents by mail on or before the accrual of their child's sixth unexcused absence that the parents may be in violation of CAL and may be prosecuted if the absences cannot be justified under established school board policies. The clear and unambiguous language of the statute does not support defendants' argument. *See In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978) ("When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.").

At trial, the trial court admitted the "three-day letter" from P.J.'s school, dated 17 November 2008, which states in pertinent part:

> You are responsible for your child's school attendance. Under Part I of the North Carolina Compulsory Attendance Law (G.S. 115C-378) you may be prosecuted in a criminal action if your child's unlawful absences continue. The maximum penalty provided by this statue [sic] upon conviction may be a fine, imprisonment, or both, at the discretion of the Judge (G.S. 115C-378).

Ms. Greenhoe, an assistant principal at T.C. Roberson, testified that the three-day letter was "generate[d]" on 17 November 2008, when P.J. accumulated her third unexcused absence, and mailed to defendants' home. P.J.'s attendance summary, which also was admitted at trial, indicates that she accumulated her sixth unexcused absence on 15 December 2008—roughly a month after the three-day letter was mailed to defendants. This evidence, viewed in the light most favorable to the State, is sufficient to permit a reasonable inference that defendants received notification by mail through the 17 November 2008 three-day letter that they were in violation of CAL and could be prosecuted for the violation prior to P.J.'s accumulating her sixth unexcused absence on 15 December 2009. *See Frady*, 195 N.C. App. at 768-69, 673 S.E.2d at 753 (approving trial court's jury instructions on elements of failure to cause attendance where instructions on fourth element required State to prove "that after not more than six unexcused absences, the defendant was further notified that she may be in violation of the North Carolina compulsory school attendance law.").

In arguing that the State failed to present sufficient evidence to establish the fifth element, defendants claim that "the State's evidence showed that the 10-day conference was . . . the first time that the school had participated in a dialogue with [defendants] about P.J.'s absences and made any attempt to eliminate the problem." Defendants maintain that N.C. Gen. Stat. § 115C-378(e) and (f) require the State to show that the school worked with the child and the parents to analyze the causes of the child's absences and determined steps to eliminate the problem *prior* to the 10-day conference.

N.C. Gen. Stat. § 115C-378(e) provides that the school attendance counselor, "[o]nce the parents are notified" that they may be prosecuted for violating CAL, "shall work with the child and the child's family to analyze the causes of the absences and determine steps, including adjustment of the school program or obtaining supplemental services, to eliminate the problem." N.C. Gen. Stat. § 115C-378(f), in turn, provides that after the child has accumulated 10 unexcused absences, the principal is required to review any reports or investigations prepared by the school's social worker regarding the lack of attendance and is required to "confer with the student and the student's parent, guardian, or custodian, if possible, to determine whether the parent, guardian, or custodian has received notification pursuant to this section and made a good faith effort to comply with the law." Read together, N.C. Gen. Stat. § 115C-378(e) and (f) establish that the school is required to work with the child and the parents

to eliminate the causes of the child's absences prior to the school's determination, based on any reports by the school's social worker and the conference with the child and the parents, as to whether the parents have made a good faith effort to comply with CAL. *See generally State v. White*, 180 Wis. 2d 203, 218, 509 N.W.2d 434, 439 (Wis. Ct. App. 1993) ("Before the person in control can be prosecuted [for violating compulsory attendance laws], there must be notice to the person in control [of the student], an opportunity for a meeting to resolve the problem, and other possible avenues leading to resolution.").

Viewed in the light most favorable to the State, the evidence at trial tends to show that P.J.'s school mailed to defendants a three-day letter on 17 November 2008 and a six-day letter on 2 February 2009, notifying defendants that they "should contact [P.J.'s] counselor or administrator . . . to discuss this matter" and that the school "would like to work with [them] to resolve this problem." The evidence also shows that the school allowed Ms. Siemens to accompany P.J. to class on multiple occasions for observation and treatment purposes. In addition, Ms. Greenhoe testified that school administrators, including the school's attendance counselor, called defendants on a "regular basis" to discuss P.J.'s attendance problems, but that they were not "getting the communication from [P.J.'s] parents to let [them] know what was going on . . . ." Ms. Greenhoe also could not recall defendants ever calling her to explain "why [P.J] wasn't coming to school[.]" Moreover, Mr. Luke, with AFS, testified that prior to the 10-day conference he talked with Mr. Morris, the assistant principal at T.C. Roberson assigned to work with P.J.'s grade level, and "recommend[ed] to the school" certain "accommodations" that would help P.J. "cope in th[e] classroom environment[.]" This evidence is sufficient to permit a reasonable jury to conclude that "after the [d]efendant[s] w[ere] notified, the school attendance counselor worked with or attempted to work with [P.J.] and the [d]efendant[s] to analyze causes of absences and determine steps to eliminate the problem" prior to the 10-day conference. *Frady*, 195 N.C. App. at 768-69, 673 S.E.2d at 753. The trial court, therefore, properly denied defendants' respective motions to dismiss.

II

[2] Defendants' only other argument on appeal is that the trial court erred "by failing to instruct the jury that it needed to determine whether [defendants] had made a 'good faith effort' to comply with the compulsory school attendance law . . . ." Defendants contend that because they did not request that the trial court's instructions include

a "good faith effort element," the court's instructions regarding the elements of the offense should be reviewed for plain error. As the State points out, however, defendants submitted a proposed instruction on the elements of the offense based on *Frady* and the trial court gave an instruction to the jury that is virtually identical to the one submitted by defendants. It is well established that a defendant who "causes" or "joins in causing" the trial court to "commit error is not in a position to repudiate his action and assign it as ground for a new trial." *State v. Payne*, 280 N.C. 170, 171, 185 S.E.2d 101, 102 (1971); N.C. Gen. Stat. § 15A-1443(c) (2009). Under the doctrine of invited error, "a party cannot complain of a charge given at his request, or which is in substance the same as one asked by him . . . ." *Sumner v. Sumner*, 227 N.C. 610, 613, 44 S.E.2d 40, 41 (1947) (internal citations omitted); *see State v. Cook*, 263 N.C. 730, 735, 140 S.E.2d 305, 310 (1965) (holding defendant could not complain on appeal that instruction was "inept or inadequate" as "it was in substance the language which defendant incorporated in his request for instructions to the jury"). Moreover, "a defendant who invites error . . . waive[s] his right to all appellate review concerning the invited error, including plain error review." *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001), *disc. review denied*, 355 N.C. 216, 560 S.E.2d 141-42 (2002).

In any event, this Court, in construing the prior version of CAL, N.C. Gen. Stat. § 115-166 (repealed 1981), held that "willfulness is not contained in G.S. 115-166 as an element of the offense, and we decline to engraft such an element on the statute[,]" noting that "[f]ew convictions, if any, could be obtained . . . if parents could merely assert justification for noncompliance in order to avoid criminal liability." *State v. Vietto*, 38 N.C. App. 99, 102, 247 S.E.2d 298, 300 (1978), *rev'd on other grounds*, 297 N.C. 8, 252 S.E.2d 732 (1979); *accord State v. Chavis*, 45 N.C. App. 438, 443, 263 S.E.2d 356, 359 ("The offense defined by G.S. 115-166 clearly does not require any specific intent, and . . . willfulness is not an element of the offense."), *disc. review denied*, 300 N.C. 377, 267 S.E.2d 679, *cert. denied*, 449 U.S. 1035, 66 L. Ed. 2d 496 (1980). As there is no element requiring proof of lack of a good faith effort to comply with CAL, the trial court did not commit error, much less plain error, by not instructing the jury on such an element.

No Error.

Judges BRYANT and McCULLOUGH concur.