**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-1459**

———————

DAVID M. THURSTON,

        Plaintiff – Appellee,

   v.

KEVIN FRYE, Avery County Sheriff, in his official and individual capacity; LEE BUCHANAN, Captain, in his official and individual capacity,

        Defendants – Appellants,

   and

AVERY COUNTY SHERIFF'S OFFICE,

        Defendant.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Max O. Cogburn, Jr., District Judge.  (1:19-cv-00299-MOC-WCM)

———————

Argued:  September 19, 2023             Decided:  April 29, 2024

———————

Before NIEMEYER, RICHARDSON, and RUSHING, Circuit Judges.

———————

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Niemeyer and Judge Rushing joined.

———————

**ARGUED:** Sean Francis Perrin, WOMBLE BOND DICKINSON (US) LLP, Charlotte, North Carolina, for Appellants. James Elliott Field, J. ELLIOTT FIELD, JD, PLLC, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Michael A. Ingersoll, WOMBLE BOND DICKINSON (US) LLP, Charlotte, North Carolina, for Appellants.

RICHARDSON, Circuit Judge:

Kevin Frye and Lee Buchanan appeal the district court's denial of their motion for summary judgment. They argue that they are entitled to qualified immunity because their arrest of David Thurston did not violate his Fourth Amendment rights. And even if it did, they say, it did not violate clearly established law. We disagree, finding that, when viewing the facts as the district court has given them to us, Thurston's arrest was unconstitutional. We also conclude that the officers have failed to prove that they acted objectively reasonably in seeking Thurston's arrest warrant.

I.    **BACKGROUND**

In 1992, Thurston pleaded guilty to two counts of sexually assaulting minors in Montana. Years later, in 2015, Thurston moved to Avery County, North Carolina, where Frye served as Sheriff and Buchanan was the Deputy in charge of sex-offender registrations. Upon Thurston's arrival, the Sheriff's Office informed him of North Carolina's strict sex-offender-registration requirements. For example, North Carolina requires an offender to register with the sheriff's office in his county of residence, N.C. Gen. Stat. § 14-208.7, and verify his registration every six months after his first year of registration, § 14-208.9A. To facilitate compliance with these requirements, a verification form is mailed to each offender on the anniversary, and half-year anniversary, of his first registration. Among other things, the law requires the offender to indicate on the form whether he has changed his address since his last verification. § 14-208.9A(a)(3)(a). And upon receipt of the form, an offender has only three days to execute and return it. § 14-208.9A(a)(2).

3

On August 9, 2016, Thurston informed Sheriff Frye that he had been invited to his nephew's wedding, which was scheduled for September 17 in Spokane, Washington. But Thurston's biannual verification was due to be sent out around that same time. Mindful of these obligations, Thurston sought Sheriff Frye's advice on how to comply with the law and asked for his permission to attend the wedding. After they exchanged texts, Sheriff Frye told Thurston on August 11 that he could "[g]o on" because the Sheriff's Office was "working on it." J.A. 721. All Thurston needed to do, Sheriff Frye explained, was email a copy of Thurston's Washington visitor-registration form within ten days of his arrival.

Thurston left North Carolina that same day. Yet on his way to Spokane, Sheriff Frye reached out again, asking Thurston for the address of where he would be staying. Thurston provided his address and later arrived in Washington on August 21. Once there, he registered as a visitor and emailed the registration to Sheriff Frye as instructed. In all, Thurston stayed for over a month, interspersed with excursions to Seattle to visit a friend.

On September 9, while Thurston was away, the Sheriff's Office mailed his verification form. Thurston's sister, who lived with him in North Carolina, told him about the form, prompting Thurston to contact Sheriff Frye for guidance. But Sheriff Frye never responded, so Thurston decided to "let it lie," given their prior interactions. J.A. 723.

The Sheriff's Office, however, did not "let it lie." Instead, Deputy Buchanan began investigating Thurston. Three times after Thurston's September 12 verification deadline, Deputy Buchanan stopped by Thurston's residence. Of course, Thurston was not there.

On October 6, the Spokane County Sheriff's Office phoned Thurston, informing him that Deputy Buchanan was looking for him and was considering getting the U.S.

4

Marshals involved. Concerned, Thurston contacted Deputy Buchanan, who said that his prolonged absence was causing problems back home. Deputy Buchanan then erroneously told Thurston that it was illegal for him to be out of the state for more than thirty days. Yet in the same breath, he also said that he had spoken with Sheriff Frye and had decided that, as long as Thurston was back in North Carolina by October 19, "there would be no problem." J.A. 723. Thurston met that deadline, returning to North Carolina on October 19.

Even so, Deputy Buchanan discussed potential criminal liability with an assistant district attorney, who recommended that Deputy Buchanan pursue charges against Thurston. And on October 19—knowing that he and Sheriff Frye had given Thurston until that day to return to the state—Deputy Buchanan obtained a warrant from a local magistrate alleging three different criminal violations committed from September 19 to October 18: (1) "being out of state for thirty (30) + days," (2) willfully failing to return his verification, and (3) willfully failing to report in person to the Sheriff's Office. J.A. 724.

On October 21—without prompting—Thurston went to the Avery County Sheriff's Office to deliver his now-completed verification form. He was greeted with an arrest. He posted bail that same day, and the charges against him were eventually dropped as a "misunderstanding with regard to how to comply with technical requirements." J.A. 725.

One year later, Thurston sued the Avery County Sheriff's Office, Sheriff Frye, and Deputy Buchanan alleging, among other things, violations of Thurston's Fourth Amendment rights. The officers asserted defenses of qualified immunity and moved for

5

summary judgment. The district court disagreed and denied their motion. This appeal followed.

## II.    DISCUSSION

Sheriff Frye and Deputy Buchanan maintain on appeal that they are entitled to qualified immunity. They first argue that they did not violate Thurston's Fourth Amendment rights because they had probable cause to seek his arrest. Further, they argue that, even if the arrest lacked probable cause, it did not violate clearly established law because it was supported by a warrant. We find, however, that Thurston's arrest violated his Fourth Amendment rights. And, under the circumstances of this case, we also conclude that Thurston's right to be free from unlawful arrest was clearly established.

Before reaching the merits, however, we first must consider our jurisdiction. *Selective Ins. Co. of Am. v. Westfield Ins. Co.*, 73 F.4th 239, 242 (4th Cir. 2023).

### A.    Jurisdiction

Outside of certain statutory exceptions, our appellate jurisdiction is limited to "final decisions" of the district courts. 28 U.S.C. § 1291. Since the denial of summary judgment is not a final decision, we generally lack jurisdiction to hear an immediate appeal of such an order. *Hensley v. Horne*, 297 F.3d 344, 347 (4th Cir. 2002). That said, under the Supreme Court's collateral order doctrine, some decisions that do not constitute final judgments are treated as sufficiently "final" to trigger appellate jurisdiction under § 1291. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). To fall within this doctrine, an order must "(1) 'conclusively determine the disputed question,' (2) 'resolve an important issue completely separate from the merits of the action,' and (3) 'be

6

effectively unreviewable on appeal from a final judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (quoting *Coopers Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).

A district court's denial of a qualified-immunity defense falls within the collateral order doctrine—but only if it turns on an issue of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We lack jurisdiction if the district court denied summary judgment because it found that the plaintiff sufficiently disputed material facts by providing adequate evidence to support his version of events. *Winfield v. Bass*, 106 F.3d 525, 529–30 (4th Cir. 1997) (en banc).

Thurston argues that the district court's qualified-immunity denial turned on facts, not law. We disagree. On appeal, the officers challenge the district court's legal determination that, viewing the evidence in the light most favorable to Thurston, a constitutional violation was alleged under clearly established law. This is a legal inquiry. Whether particular conduct violates a constitutional right and whether that right is clearly established are legal questions. *Iko v. Shreve*, 535 F.3d 225, 235 (4th Cir. 2008); *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (applying this to a Fourth Amendment claim). And we may review such questions on interlocutory appeal because we don't *find* the facts underlying the claim but rather accept them "as the district court gives them to us—that is,

7

in the light most favorable to the plaintiff." *Hicks v. Ferreya*, 965 F.3d 302, 309 (4th Cir. 2020); *Mitchell*, 472 U.S. at 530.[1]

### B.    Qualified Immunity

Qualified immunity protects government officials from claims of statutory or constitutional violations when they reasonably mistook the legality of their actions. *See Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012). To determine whether Sheriff Fry and Deputy Buchanan are entitled to qualified immunity, we must answer two questions, with a split burden of proof. *See Stanton v. Elliot*, 25 F.4th 227, 233 (4th Cir. 2022). First, has Thurston established that, when viewing the evidence most favorably to him, the officers violated his constitutional rights? *Id.* If so, then have the officers shown that the asserted rights were not clearly established by law at the time of the interaction? *Id.* Put another way, have the officers established that it was not "clear to a reasonable officer that the conduct in which [they] allegedly engaged was unlawful in the situation [they] confronted"? *Merchant*, 677 F.3d at 662 (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)). Because we answer the first in the affirmative and the second in the negative, we affirm the district court's denial of summary judgment.

---

[1] That the district court noted the existence of genuine disputes of material fact does not convert this into an unreviewable factual question. "Denial of summary judgment often includes a determination that there are controverted issues of material fact." *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996). While we may not review whether there were genuine issues of material fact on appeal, we may address the portions of an order denying summary judgment that "resolve a dispute concerning an abstract issue of law relating to qualified immunity—typically, the issue whether the federal right allegedly infringed was clearly established." *Id.* at 313 (cleaned up). That is what the officers ask us to do here.

**1.** *Thurston established that the officers violated his Fourth Amendment right against unreasonable seizure.*

On the first question, Thurston alleges that his warrant-backed arrest violated the Fourth Amendment because it amounted to an unreasonable seizure.[2]  When a person seeks to challenge a warrant-backed arrest under the Fourth Amendment as lacking probable cause, that challenge "at most . . . can be pursued through a cause of action for malicious prosecution." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998); *Smith v. Munday*, 848 F.3d 248, 252 (4th Cir. 2017).[3]  In order to establish malicious prosecution, a plaintiff must show that (1) the defendant seized him pursuant to legal process but without probable cause and (2) the criminal proceedings terminated in the plaintiff's favor.  *Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014).  The parties do not contest the favorable-termination prong.  Thus, Thurston carries his burden on the first question if he shows that there was no probable cause to arrest him.  *Id.* at 357; *Smith*, 848 F.3d at 253.

"Probable cause has long been understood to encompass circumstances that, while less than a preponderance, 'warrant suspicion.'"  *United States v. Gondres-Medrano*, 3 F.4th 708, 714 (4th Cir. 2021) (quoting *Locke v. United States*, 11 U.S. (7 Cranch) 339, 348 (1813)).  Whether circumstances "warrant suspicion" turns on the combination of two

---

[2] The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures" and guarantees that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

[3] A false-arrest claim applies only to the reasonableness of a *warrantless* arrest and cannot be maintained when the official "arrests a defendant pursuant to a facially valid warrant." *Porterfield*, 156 F.3d at 568; *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996).

factors: the suspect's conduct as known to the officer and the nature of the offense.[4] *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016). So to determine whether an arrest was backed by probable cause, we ask whether the facts known to the officer could make a prudent officer believe that the suspect's conduct satisfies the elements of a criminal violation. *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019). And in so doing, we remain mindful of the Supreme Court's admonition that "in a doubtful or marginal case a [seizure] under a warrant may be sustainable where without one it would fall." *United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *United States v. Ventresca*, 380 U.S. 102, 106 (1965)).

Thurston's arrest warrant identified three crimes: (1) failing to register that he would be out of state for thirty days, purportedly in violation of N.C. Gen. Stat. § 14-208.11; (2) willfully and feloniously failing to return the form verifying his address to the Sheriff's Office in the time allotted, in violation of § 14-208.11(a)(3); and (3) willfully and feloniously failing to report in person to the Sheriff's Office, in violation of § 14-208.11(a)(7).[5]

---

[4] Probable cause need not be tailored to the offense the arresting official suspected at the time of arrest. Rather, probable cause exists when "the officer had probable cause to arrest for *any* offense, not just the offense cited at the time of arrest or booking." *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018) (emphasis added). Thus, we assess probable cause in relation to any crime identified by the parties in the case, even one identified only during litigation. *See id.*; *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

[5] As the parties discuss only these potential offenses, we do the same. *See Wesby*, 583 U.S. at 55 n.2.

The parties agree that the officers lacked probable cause for the first, nonexistent offense.[6] But they contest probable cause for the other two offenses. Thurston argues that these crimes carry a *mens rea* element of willfulness. *See* N.C. Gen. Stat. § 14-208.11(a). And, according to him, at the time they sought the warrant, the officers lacked probable cause to believe he was acting "willfully."

North Carolina defines "willful" as (1) "the commission of an act purposely and deliberately in violation of law," or (2) "the wrongful doing of an act without justification or excuse." *State v. Ramos*, 678 S.E.2d 224, 226 (N.C. 2009) (quoting *State v. Arnold*, 141 S.E.2d 473, 474 (N.C. 1965)). Thus, willfulness can be established in two ways. First, a person acts willfully when she specifically intends to break the law. But that means that conduct stemming from a mistake of law, *State v. Chavis*, 263 S.E.2d 356, 359 (N.C. Ct. App. 1980), or a defendant's belief that "she ha[s] the right" to do what might otherwise be criminal conduct, *State v. Humphreys*, 853 S.E.2d 789, 799–800 (N.C. Ct. App. 2020), is not generally considered "willful." Second, a person acts willfully when she wrongfully acts without justification or excuse, even if she lacks specific criminal intent. *Ramos*, 678 S.E.2d at 226; *State v. Chamberlain*, 753 S.E.2d 725, 730 (N.C. Ct. App. 2014). To determine whether a person so acts, we ask whether she acts "wrongful[ly]," *Arnold*, 141 S.E.2d at 474, with a "bad purpose," *State v. Clifton*, 67 S.E. 751, 752 (N.C. 1910), or

---

[6] We note that "the protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). But the officers do not press on appeal that their mistake of law here was reasonable, and so we do not address it.

"without just cause, excuse, or justification," *State v. Dickens*, 1 S.E.2d 837, 839 (N.C. 1939) (quoting *State v. Yelverton*, 144 S.E. 534, 535 (N.C. 1928)).[7]  Put more succinctly, we ask whether she was animated by some improper motive.[8]

Deputy Buchanan and Sheriff Frye therefore needed some reason to believe that Thurston either purposefully violated the law or acted with some other improper purpose. *Ramos*, 678 S.E.2d at 226; *Clifton*, 67 S.E. at 752; *cf. Wesby*, 583 U.S. at 57–62.  But the district court's order forecloses any argument that they believed this.  Viewing the evidence in the light most favorable to Thurston, the district court accepted that both defendants "definitely knew that . . . Thurston was eager to comply with the law." *Thurston v. Avery Cnty. Sheriff's Off.*, No. 1:19-CV-299, 2021 WL 1093097, at *8 (W.D.N.C. Mar. 22, 2021). And the district court accepted that the officers knew that Sheriff Frye gave Thurston permission to travel and that Thurston followed every instruction the Sheriff's Office gave him. *Id.*  In so concluding, the district court not only accepted the facts alleged about Thurston's actions but also accepted that the officers had concluded, based on those actions, that Thurston was eager to comply with the law throughout his sojourn.

---

[7] To illustrate this notion of willfulness, consider *State v. Davis*, 356 S.E.2d 607 (N.C. Ct. App. 1987).  A jury there convicted the defendant of willful and wanton injury to real property by intentionally clogging a toilet in a museum, which led to extensive water damage. *Id.* at 609.  The court sustained the conviction, noting that it was "not necessary for a person to know that he is breaking the law for an act to be 'willful'" and that the jury could reasonably "infer that defendant put the paper towels in the toilet intending to create a serious water problem," which sufficed to show willfulness. *Id.* at 610.

[8] With this understanding, we can see the first category (intent to break the law) as an outgrowth of this second category.  If you intend for your conduct to break the law, then you have acted with some improper purpose.

In this interlocutory appeal, we must accept "the facts as the district court gives them to us." *Hicks*, 965 F.3d at 309.[9]  Doing so requires us to conclude that the officers lacked probable cause to believe that Thurston acted willfully.[10]  The district court accepted the inference that Thurston, by asking Sheriff Frye for advice and obtaining his permission to leave, believed that he was following the law and remained motivated by a desire to follow the law.  Even if Thurston's beliefs were mistaken, "a mistake of law" is a defense to an offense that requires willfulness.  *Chavis*, 263 S.E.2d at 359.  And since the district court has accepted that the officers knew Thurston's beliefs and motives, it was unreasonable for the officers to believe that Thurston acted with "a bad purpose" or "with knowledge that his conduct was unlawful."  *Ramos*, 678 S.E.2d at 226; *Clifton*, 67 S.E. at 752.  Therefore, a prudent officer could not reasonably conclude that Thurston was acting "willfully"; so

---

[9] That is, we must accept how the district court understood the facts in the light most favorable to the plaintiff.  *Hicks*, 965 F.3d at 309.  But that doesn't mean "we are strictly confined to the four corners of the district court's order: we may assume some facts when the district court does not explicitly state them, provided that we draw all inferences in the plaintiff's favor." *Williams v. Strickland*, 917 F.3d 763, 768 n.3 (4th Cir. 2019).  Here, however, the district court explicitly stated all that is needed to decide whether probable cause existed—that Deputy Buchanan and Sheriff Frye knew that Thurston was eager to comply with the law and that he had complied with their office's instructions.  This places us in a markedly distinct procedural posture than the Supreme Court in *District of Columbia v. Wesby*.  There, the district court made no explicit statement that the officers knew that the arrestees lacked the requisite *mens rea*.  *See* 583 U.S. at 57.  So the Court could reject the appeals court's conclusion that the arrestees had the requisite *mens rea*.  *Id.*  In contrast, we are bound by the district court's version of the facts.

[10] Though accepting that the officers knew that "Thurston was eager to comply with the law" for evaluating summary judgment, the district court acknowledged that a genuine dispute of material fact remained "about what [Deputy] Buchanan knew" as well as "what he communicated to the district attorney and magistrate judge when he sought the warrant." *Thurston*, 2021 WL 1093097, at *8–9.

13

there was no probable cause to believe that he was guilty of either the second or the third charge.

Accordingly, accepting the facts as the district court has given them to us, Sheriff Frye and Deputy Buchanan lacked probable cause to arrest Thurston for any of the crimes alleged in the warrant. For "notwithstanding the deference that magistrates deserve," *Leon*, 468 U.S. at 915, the officers' knowledge of Thurston's pure motives precludes finding that probable cause existed.

### 2. *The officers did not prove that Thurston's arrest was not contrary to clearly established law.*

Finding a constitutional violation merely begins the qualified-immunity inquiry. Now the burden shifts to Sheriff Frye and Deputy Buchanan to show that the arrest was not contrary to clearly established law. *Stanton*, 25 F.4th at 233 n.5. This requires showing that Thurston's "right to be free from arrest under the particular circumstances of the case" was not clearly established. *See Graham*, 831 F.3d at 182. And the officers should be immune—that is, they did not act contrary to clearly established law—so long as they "acted in an objectively reasonable manner or . . . in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Leon*, 468 U.S. at 922–23). So whether a plaintiff's right to be free from arrest is clearly established turns not on "whether there actually was probable cause . . . but whether an objective law officer could

14

reasonably have believed probable cause to exist." *Gomez v. Atkins*, 296 F.3d 253, 261–62 (4th Cir. 2002).[11]

The officers' primary evidence that an objective officer could believe that probable cause existed is that they arrested Thurston pursuant to a warrant. And it is true that, when officers conduct an arrest pursuant to a warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt*, 565 U.S. at 546; *Graham*, 831 F.3d at 183. But the Supreme Court has recognized a narrow exception to this rule, holding that a warrant loses its evidentiary value for objective reasonableness when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 565 U.S. at 547 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *Smith*, 848 F.3d at 255. For instance, "where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" "the 'shield of immunity' otherwise conferred by the warrant . . . will be lost." *Messerschmidt*,

---

[11] Some circuits have explained this concept as "arguable probable cause." *See, e.g.*, *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir. 1985) ("[S]eeking an arrest warrant is 'objectively reasonable' so long as the presence of probable cause is at least arguable."). We see no distinction between the "arguable probable cause" test and the Supreme Court's formulation of the inquiry that turns on whether a probable-cause belief is "reasonable." And as even those circuits recognize, "probable cause for a warrantless arrest may be different than probable cause for the issuance of an arrest warrant." *Id.*

15

565 U.S. at 547 (first quoting *Leon*, 468 U.S. at 923; and then quoting *Malley*, 475 U.S. at 345); *Sims v. Lavowitz*, 885 F.3d 254, 264 (4th Cir. 2018).[12]

This is one such exceptional case. Although we do not have the warrant application on record, we assume that the officers fairly presented the facts known to them to the magistrate. *See Graham*, 831 F.3d at 189 (assuming, in the absence of the application on record, that the officers "fairly presented" the known facts to the magistrate); *Merchant*, 677 F.3d at 665.[13] Accepting the district court's view of the facts, this would include their

---

[12] The principles we espouse here apply to an officer who sought and obtained the warrant. Different principles may apply to an officer who only executed the warrant. After a warrant issues, officers have "a sworn duty to carry out its provisions." *Leon*, 468 U.S. at 920 n.21. Warrants thus impose on officers "an obligation to arrest" the person named in the warrant. *Utah v. Strieff*, 579 U.S. 232, 240 (2016). Of course, before executing the warrant, the officer has "a duty to ensure that the warrant conforms to constitutional requirements." *Groh*, 540 U.S. at 563 n.6. But as long as the previously issued warrant is not "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid," "'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith'" in executing it. *Leon*, 468 U.S. at 922–23 (quoting *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982)). That is because, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921.

[13] We caution that this assumption may not always be warranted. But under these circumstances, it is. Drawing all inferences in Thurston's favor, the district court accepted that the officers knew a highly exculpatory fact that would have negated probable cause. This leaves us with only two options: Either the officers included this fact in the warrant application, in which case they likely transgressed *Leon*, or they omitted it from the application, in which case they likely violated *Franks v. Delaware*, 438 U.S. 154 (1978). *See Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007) (holding that an officer violates *Franks* when he omits from the affidavit "material facts with the intent to make, or with reckless disregard of whether [he] thereby made, the affidavit misleading" (citation omitted)); *United States v. Lull*, 824 F.3d 109, 117 & n.2 (4th Cir. 2016) (holding that the exculpatory significance of the information omitted can inform our conclusion about an officer's intent). Either option fatally undermines the evidentiary value of the (Continued)

16

knowledge that Thurston was trying to comply with the law. At the time of the officers' actions, the North Carolina Supreme Court had acknowledged the willfulness requirement baked into North Carolina's sex-offender-registry statute. *See State v. Crockett*, 782 S.E.2d 878, 883 (N.C. 2016). And as discussed above, North Carolina law has clearly established that people do not act willfully when they are motived by a desire to comply with the law. So when the officers sought and obtained an arrest warrant, they had affirmative knowledge that Thurston was not breaking the law.[14] No reasonable officer in such circumstances could believe that a warrant should issue. *Malley*, 475 U.S. at 341. Therefore, the warrant cannot establish the officers' objective reasonableness.

In so holding, we are mindful of the Supreme Court's oft-repeated guidance that a right is only clearly established if it has a "sufficiently clear foundation in then-existing precedent." *Wesby*, 583 U.S. at 63; *see also White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (holding that a court must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment"). Even so, the unlawfulness of seeking out and executing a warrant after learning facts establishing a

---

warrant. Thus, given that the officers bear the burden of proof at this step of the inquiry, and given that we must draw all inferences for Thurston, we cannot hold at this posture that the warrant is sufficient evidence of objective reasonableness.

[14] While Deputy Buchanan was the officer who sought out the warrant, there was a dispute about Sheriff Frye's involvement in the warrant-application process. As the district court concluded, "it is unclear what communications occurred between [Deputy] Buchanan and Sheriff Frye as [Deputy] Buchanan began to seek an arrest warrant for Mr. Thurston." *Thurston*, 2021 WL 1093097, at *6. Still, there is some evidence that the two officers discussed Thurston's case before Deputy Buchanan applied for the warrant. So, viewing the evidence in the light most favorable to Thurston, Sheriff Frye was sufficiently involved to justify liability at this stage. *See Leon*, 468 U.S. at 923 n.24.

17

suspect's innocence was clearly established by our holding in *Merchant v. Bauer*, 677 F.3d 656. *Merchant* involved a § 1983 suit against an officer who applied for a warrant and arrested the plaintiff for falsely assuming the privileges of or pretending to be a police officer. *Id.* at 665. We held that the officer lacked probable cause to conduct the arrest, despite the issuance of a warrant, because he knew information before applying for the warrant that both undermined any other evidence the officer might have had and tended to exonerate the plaintiff of the crime. *Id.* at 663, 665. In other words, we held that knowledge of sufficiently exculpatory information trumps the inculpatory evidence of the warrant. So too here. The district court found that Sheriff Frye and Deputy Buchanan knew that Thurston was not acting willfully and thus could not satisfy each element of the relevant crimes, yet they sought a warrant and arrested him anyway. After *Merchant*, no reasonable officer could believe that an arrest in such circumstances was lawful.[15]

In one last attempt, the officers point to an assistant district attorney's suggestion that Deputy Buchanan seek out a warrant against Thurston. And the Supreme Court in *Messerschmidt* did treat the officer's decision to speak with two superiors and a prosecutor as "pertinent" evidence of objective reasonableness. 565 U.S. at 554–55. For when officers "t[ake] every step that could reasonably be expected of them" to confirm the existence of probable cause, such as by going all the way up the internal chain of command before submitting a warrant application to a magistrate, that is good evidence of the

---

[15] Even if *Merchant* were not fully on-point, we would still decline to rule in the officers' favor, since this is one of those rare "obvious case[s] where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 538 U.S. at 64.

officers' good faith. *Id.* at 554 (quoting *Massachusetts v. Sheppard*, 468 U.S. 981, 989 (1984)). But the officer in *Merchant* did so, too, yet we still found that this could not overcome the extreme unreasonableness of the officer's actions. *Merchant*, 677 F.3d at 664. This makes sense. When probable cause is debatable, a district attorney's approval, following "a full presentation of the known facts," *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255 (3d Cir. 2010) (quoting *Cox v. Hainey*, 391 F.3d 25, 32 (1st Cir. 2004)), should serve as good evidence of objective reasonableness. *Messerschmidt*, 565 U.S. at 555. But it makes less sense to do so when no reasonable officer would have sought out the warrant. If "the greater incompetence of the magistrate" issuing a warrant cannot excuse the officer's conduct, *Malley*, 475 U.S. at 346 n.9, then it's hard to see why the greater incompetence of the district attorney can do so. Like we held in *Merchant*, when no reasonable officer would seek out a warrant, an officer's "conversation with the state's lawyer does not—as a matter of law—overcome the unreasonableness of the criminal charge and its lack of probable cause." 677 F.3d at 664. This is especially true when we don't even know what the officers told the district attorney during that conversation.[16] *Cf. Messerschmidt*, 565 U.S. at 553–54 (detailing how the officers "submitted the warrant application for review by [two superiors and a deputy district attorney]"); *Gomez*, 296 F.3d at 264. Thus, the assistant district attorney's suggestion that the officers seek out a warrant against Thurston does not prove the objective reasonableness of their actions.

---

[16] *Thurston*, 2021 WL 1093097, at *9 ("[T]here remains a genuine dispute of material fact about what [Deputy] Buchanan knew and what he communicated to the district attorney and magistrate judge when he sought the warrant.").

We thus conclude that the officers have failed to carry their burden to show that they are entitled to summary judgment.  Though they acted pursuant to a warrant, no reasonable officer would have sought out a warrant here.  The district court therefore correctly denied their assertions of qualified immunity.

*          *          *

Qualified immunity is controversial and criticized.  But it is binding.  And it provides a powerful defense for officers who, while performing the critical services they provide to society, make reasonable mistakes in complying with the law.  And warrants serve a similar purpose.  We recognize that "the magistrate is more qualified than the police officer to make a probable cause determination."  *Malley*, 475 U.S. at 346 n.9.  Thus, a magistrate's approval of a warrant application in the average case will be the "clearest indication" of the officer's objective reasonableness.  *Messerschmidt*, 565 U.S. at 546.

But "clearest" should not be confused with "absolute."  In a narrow set of cases, where no reasonable officer would have sought the warrant, we cannot treat its issuance as evidence of objective reasonableness.  Taking the facts as the district court has given them to us, we find that this is one such case, and that the officers have not carried their burden to prove objective reasonableness.  Thus, the district court's decision must be

*AFFIRMED.*