**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-2224**

EVY B. ORELLANA,

Plaintiff - Appellee,

v.

DEPUTY UNITED STATES MARSHAL RYAN GODEC, in his individual capacity; DEPUTY UNITED STATES MARSHAL TRISTAN MARTIN, in his individual capacity

Defendants - Appellants,

and

UNITED STATES OF AMERICA; JOHN DOE U.S. MARSHALS 1-2, in their individual capacities

Defendants.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge.  (8:20-cv-00845-TDC)

Argued:  January 31, 2025                              Decided:  July 30, 2025

Before GREGORY, RICHARDSON, and RUSHING, Circuit Judges.

Reversed by published opinion.  Judge Richardson wrote the opinion, in which Judge Rushing joined.  Judge Gregory wrote a dissenting opinion.

**ARGUED:** Dana Lydia Kaersvang, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Timothy Francis Maloney, JOSEPH, GREENWALD & LAAKE, P.A., Greenbelt, Maryland, for Appellee. **ON BRIEF:** Brian M. Boynton, Principal Deputy Assistant Attorney General, Barbara L. Herwig, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Lisa Dickinson, General Counsel, Leah Brownlee Taylor, Deputy General Counsel, Leshia Lee-Dixon, Associate General Counsel, Office of General Counsel, UNITED STATES MARSHALS SERVICE, Washington, D.C., for Appellants. Alyse L. Prawde, JOSEPH, GREENWALD & LAAKE, P.A., Greenbelt, Maryland, for Appellee.

RICHARDSON, Circuit Judge:

Evy Orellana suffered serious injuries when a tactical canine bit her leg as a U.S. Marshals fugitive task force executed an arrest warrant for her boyfriend, Eric Trinidad. She brought an action against the officers under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), claiming that they had violated her Fourth Amendment rights with an unreasonable search and seizure. The officers moved to dismiss the claims, arguing that *Bivens* was unavailable in this situation. The district court denied the motion, reasoning that the case was similar enough to *Bivens* that its cause of action should apply.

We disagree. The Supreme Court has repeatedly cautioned courts about extending *Bivens* into new areas. And this case is a new area for two reasons: The officers operated as part of a narrow, collaborative federalist scheme mandated by Congress, and they had a warrant to execute the search. Since this is a new context, we must consider whether any reason exists to believe that Congress would be better suited to create the new cause of action. There is, so we reverse.

## I.    Background

### A.    Factual Background

In 2018, a Maryland state court issued an arrest warrant for Eric Trinidad for first- and second-degree assault and reckless endangerment. These charges stemmed from an altercation with his girlfriend, Evy Orellana. Orellana, Trinidad, and their four-month-old baby lived in the basement of Trinidad's mother's home. Although part of the basement

could be reached from the main house, their living area was separated by a permanently sealed door. Orellana and Trinidad could access their living area only through a separate entrance in the back.

U.S. Marshals served the warrant at 2:00 AM. They were part of the Capital Area Regional Fugitive Task Force, a joint task force composed of federal, state, and local law enforcement officers that arrests fugitives under both state and federal warrants. Task force members knocked on the front door, and Trinidad's mother opened. She told them that Trinidad wasn't home. The officers asked everyone in the house to move outside and proceeded to search the building.

During the search, however, an officer noticed that Trinidad was calling his mother's cell phone, which was sitting on a nightstand. And when the officers woke up Trinidad's sister, Vanessa, they saw that Trinidad was calling her phone too. An officer asked Vanessa if Trinidad was in the basement. She nodded and said "Evy [Orellana], Eric [Trinidad] and the baby are downstairs." J.A. 474.

So, the Task Force members say, they called out to Trinidad from the top of the basement stairs to warn that they would soon release their tactical dog, Dart. Trinidad didn't respond, so the officers sent Dart down to search for him. But Dart quickly returned. They sent him down again; again he came right back. Then officers went down the stairs and found the sealed-off door that separated Trinidad's apartment.

The officers breached the barrier with a pry bar and a battering ram. They chipped away until they managed to open a dog-sized hole. Then Dart squeezed through the hole and ran into the basement apartment, where he bit Orellana, pulling her to the ground and

4

tearing a chunk of flesh out of her leg.  Officers heard screams, rushed through the door, provided aid, and arrested Trinidad.

### B.      Procedural Background

Orellana sued, bringing *Bivens* claims against the officers in their individual capacities, alleging that they used excessive force in violation of the Fourth Amendment.[1] The officers moved to dismiss, asserting that this was a new *Bivens* context and that special factors counsel against extending the cause of action.  In the alternative, they moved for summary judgment, arguing that they were entitled to qualified immunity.

The district court denied the motions.  It determined that the suit did not constitute a new *Bivens* context and so denied the motion to dismiss.[2] *Orellana v. United States*, No. 20-cv-00845, 2023 WL 6217447, at *7 (D. Md. Sept. 25, 2023).  It also concluded that qualified immunity did not apply, and so it denied summary judgment on that issue. *Id.* at *11.

The officers now take an interlocutory appeal, arguing that the district court's qualified-immunity and *Bivens* decisions were independent errors.

---

[1] Orellana also sued the United States under the Federal Tort Claims Act.  We address only her *Bivens* claims against the Marshals as the other claims remain pending.

[2] Because the district court concluded that it wasn't a new context, it did not reach *Bivens* step two and consider whether special factors counseled against extending the cause of action.

## II.      Jurisdiction

Before we proceed to the merits, we must first be sure that we are able to hear the case.  Unless a district court certifies an issue for interlocutory appeal, our jurisdiction is limited to final orders.  28 U.S.C. § 1291; § 1292(b).  And since orders denying summary judgment, or a motion to dismiss, aren't final, we normally aren't able to hear them. *William v. Strickland*, 917 F.3d 763, 767 (4th Cir. 2019).

But a narrow exception exists.  Under the collateral order doctrine, we treat some non-final orders as though they are final enough to create appellate jurisdiction. *Thurston v. Frye*, 99 F.4th 665, 672 (4th Cir. 2024).  For this doctrine to apply, the order needs to "conclusively determine the question," "resolve an important issue completely separate from the merits of the action," and "be effectively unreviewable on appeal from a final judgment." *Id.* (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989)) (quotation marks removed).  Appeals from the denial of a qualified immunity defense fall within the collateral order doctrine. *See, e.g.*, *Iko v. Shreve*, 535 F.3d 225, 234 (4th Cir. 2008) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is [immediately appealable] notwithstanding the absence of a final judgment" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  So we have appellate jurisdiction over the district court denial of qualified immunity.

And appellate jurisdiction to review the officers' qualified immunity also provides appellate jurisdiction to review whether *Bivens* creates the cause of action to which the officers assert that immunity. *Wilkie v. Robbins*, 551 U.S. 537, 550 n.4 (2007).  Whether *Bivens* creates a cause of action lies upstream of the officers' affirmative qualified-

6

immunity defense against that cause of action. *Doe v. Univ. of North Carolina Syst.*, 133 F.4th 305, 315 (4th Cir. 2025). Affirmative defenses are relevant only when there is potential liability; a shield matters only when a sword exists. So the affirmative defense of qualified immunity directly implicates "the recognition of the entire cause of action" under *Bivens*. *Wilkie*, 551 U.S. at 550 n.4. We thus have jurisdiction over the *Bivens* question.[3]

## III.   Discussion

We begin—and end—with the question whether Orellana has a cause of action under *Bivens*. Although her claim bears superficial resemblance to *Bivens*, the Supreme Court has repeatedly admonished that in this area, we must attend to details. And with those details in focus, Orellana's *Bivens*' claim fails. Congress—not courts—should create any cause of action for plaintiffs like Orellana. Holding that Orellana has no cause of action, we affirm without considering whether the officers were protected by qualified immunity.

### A.      The Supreme Court has warned us to be cautious about creating new *Bivens* actions

"Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024). "Instead, constitutional rights are generally invoked defensively in cases arising under other sources

---

[3] We apply *de novo* review. *Benjamin v. Sparks*, 986 F.3d 332, 351 (4th Cir. 2021).

7

of law, or asserted offensively pursuant to an independent cause of action designed for that purpose." And those independent causes of action must normally come from Congress, for we are "[n]ow long past 'the heady days in which [courts] assumed common-law powers to create causes of action.'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring)).

Still, the cause of action first created in *Bivens* continues to cover three narrow domains. First, in *Bivens* itself, the Supreme Court created an implied cause of action under the Fourth Amendment to recover damages suffered as the result of a warrantless search and seizure. *See generally Bivens*, 403 U.S. 388. There, six Federal Bureau of Narcotics agents, acting without a warrant or probable cause, arrested Bivens in front of his family. They threatened to detain his family, then took Bivens away and strip-searched him at a federal courthouse. *Id.* at 389. To remedy the situation, the Court fashioned a cause of action so that Bivens would be "entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the [Fourth] Amendment." *Id.* at 397. Second, *Davis v. Passman* extended *Bivens* to a congressional staffer fired because of her sex in violation of the Fifth Amendment. *See* 442 U.S. 228 (1979). Last, *Carlson v. Green* extended *Bivens* to a third context, allowing a federal prisoner's estate to bring an Eighth Amendment claim for deficient care. *See* 446 U.S. 14, 16, 18–20 (1980).

"For the past 45 years, [the Supreme] Court has consistently declined to extend *Bivens* to new contexts." *Goldey v. Fields*, 606 U.S. 942, 945 (2025) (per curiam); *see also Tun-Cos v. Perrotte*, 922 F.3d 514, 521 (4th Cir. 2019) (noting cases where the Supreme Court has declined to extend *Bivens* to new contexts). In the meantime, it "has made clear"

8

to the inferior courts "that expanding the *Bivens* remedy to a new context is an 'extraordinary act' that will be unavailable 'in most every case.'" *Mays*, 70 F.4th at 202 (first quoting *Egbert*, 596 U.S. at 497 n.3; then quoting *id.* at 492).

### B.  Extending *Bivens* requires a two-step analysis

Under this precedent, we conduct "a highly restrictive two-step analysis" to decide whether a *Bivens* cause of action exists. *Bulger v. Hurwitz*, 62 F.4th 127, 137 (4th Cir. 2023). At step one, we ask whether the case "arises in a 'new context' or involves a 'new category of defendants.'" *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020) (quoting *Malesko*, 534 U.S. at 68). "And our understanding of a 'new context' is broad." *Id.* If a case "is different in a meaningful way from previous *Bivens* cases," it involves an extension of *Bivens*. *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017).

Many, many differences can be meaningful: "[T]he rank of the officers involved," "the constitutional right at issue," "the extent of judicial guidance" on the issue, "the generality or specificity" of the action in question, "the statutory or other legal mandate under which the officer was operating," "the risk of disruptive intrusion by the Judiciary into the functioning of other branches," and "potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 582 U.S. at 140. If—and only if—the case is precisely like *Bivens*, *Passman*, or *Carlson* in all these ways, we stop at step one and allow the claim to proceed.

But if the case differs from the *Bivens* trio in any of these respects, and so would extend *Bivens* to a new context, then we proceed to a second step. At that step, we ask

whether any special factors counsel against extending *Bivens*. And really, "special factors" is now a misnomer. *Compare Passman*, 442 U.S. at 246–47 (looking for "*explicit* congressional declaration that" plaintiffs "may not recover money damages"), *with Abbasi*, 582 U.S. at 137 (asking whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy"). Today, step two's search for reasons casts an even broader net than step one: If "there is *any* rational reason (even one) to think that *Congress* is better suited" to provide a cause of action than we—including even "the *potential*" that "judicial intrusion into a given field might be harmful or inappropriate"— then we must deny the cause of action. *Egbert*, 596 U.S. at 496 (quotation omitted).

Creating causes of action is Congress's job. So the Supreme Court "has repeatedly emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Goldey*, 606 U.S. at 944 (cleaned up).

### C. This is a new context because the officers were a fugitive task force and had a warrant

At a superficial level of generality, the actions of the Task Force officers bear at least a little resemblance to those of the *Bivens* agents. Both cases involve claims of unreasonable force in violation of the Fourth Amendment. *Compare Bivens*, 403 U.S. at 389–90, *with Orellana*, 2023 WL 6217447, at *2–3. But we do not consider context at a superficially high level of generality. We must focus instead on the details. And there, "[e]ven 'small' differences can be 'meaningful.'" *Ahmed v. Weyker*, 984 F.3d 564, 568 (8th Cir. 2020) (quoting *Abbasi*, 582 U.S. at 149). Unlike *Bivens*, this case involves a

10

different statutory scheme: U.S. Marshals working in a fugitive task force including federal, state, and local agents. And the task force acted under the authority of a warrant. So allowing a *Bivens* remedy here would expand it into a new context.

### 1. The Task Force's unique statutory mandate implicates federalism concerns

*Bivens* is still "settled law" "in the search and seizure context." *Abbasi*, 582 U.S. at 134. This means that the cause of action is available for "warrantless searches and seizures" closely resembling *Bivens* done "by line officers performing routine criminal law enforcement duties." *Hicks v. Ferreyra*, 64 F.4th 156, 167 (4th Cir. 2023).

But this is no such case. To start, this case involves a "new category of defendants." *Egbert*, 596 U.S. at 492 (quoting *Malesko*, 534 U.S. at 68). The U.S. Marshals Service is not first and foremost a law-enforcement agency. Its "primary role and mission" is more specific: "to provide for the security and to obey, execute, and enforce all orders of" the federal courts. 28 U.S.C. § 566(a).[4] The Service's distinctive role and unique relationship with the Judiciary give us reason to worry that we "likely cannot predict the systemwide consequences of" extending *Bivens* to Marshals. *Egbert*, 596 U.S. at 493 (quotation omitted). The "range of policy considerations" that this could involve, *Bivens*, 403 U.S. at

---

[4] The Service is almost as old as Fourth Amendment itself. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 339 (2001). A year after ratifying the Bill of Rights, Congress "vested federal marshals with 'the same powers in executing the laws of the United States, as sheriffs and their deputies in the several states have by law, in executing the laws of their respective states.'" *Id.* (quoting Act of May 2, 1792, ch. 28, § 9, 1 Stat. 265); *see Cunningham v. Neagle*, 135 U.S. 1, 68 (1890).

11

407 (Harlan, J., concurring in the judgment), suggests that Congress may be "far more competent than the Judiciary to carry out the necessary balancing," *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988) (quotation omitted).

And although not *every* new defendant will make for a new context, this case involves a different "statutory or other legal mandate under which the officer was operating." *Abbasi*, 582 U.S. at 140. Here, the Service operated under its congressional mandate to coordinate federal, state, and local law enforcement agencies chosen by the Attorney General to form joint fugitive task forces for the purpose of "locating and apprehending fugitives." 34 U.S.C. § 41503(a).

These joint task forces give us two more reasons to pause. First, they operate under narrow, specialized mandates. These officers were not beat cops on patrol; they executed a warrant as part of the Capital Area Regional Fugitive Task Force to "apprehend[] [a] fugitive" at Congress's and the Attorney General's direction. 34 U.S.C. § 41503(a). This activity lies far outside the "common and recurrent sphere of law enforcement" where *Bivens* remains a "fixed principle." *Abbasi*, 582 U.S. at 134.

Second, these task forces raise federalism concerns that ordinary federal law-enforcement does not. They consist of officers from an array of federal, state, and local agencies. *See* 34 U.S.C. § 41503(a); *Robinson v. Sauls*, 102 F.4th 1337, 1345 (11th Cir. 2024). And these officers don't just work side-by-side; the Marshals have the authority to federally deputize other officers on the task forces, bringing what would otherwise be state action under a federal banner. 28 C.F.R. § 0.112; *see Yassin v. Weyker*, 39 F.4th 1086,

12

1090–91 (8th Cir. 2022). This case makes for a good example: The team that entered Orellana's home included officers from eight federal and local agencies.

Just as the Supreme Court has declined to expand *Bivens* when international comity is at stake, we decline to expand *Bivens* when state-federal relations are on the line. *See Hernandez*, 589 U.S. at 103–04, 107–09, *see also Dyer v. Smith*, 56 F.4th 271, 280–81 (4th Cir. 2022) (deciding national security considerations counseled against extending *Bivens* to a Fourth Amendment claim against TSA agents). Instead, we join our sister circuits in holding that these joint task forces are new *Bivens* contexts. *See Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1358–59 (10th Cir. 2024) (finding the duty to partner with state and local agencies "[o]f particular relevance" to finding that the Marshals Service is a new context); *see also Robinson*, 102 F.4th at 1345; *Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *4 (6th Cir. July 25, 2023).

### 2.    The Task Force operated pursuant to a warrant

Another reason to treat this case as a new *Bivens* context is that the officers acted under a warrant. In a Fourth Amendment case, that can make all the difference. "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). By contrast, "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness." *United States v. Leon*, 468 U.S. 897, 922 (1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 267 (1983) (White, J., concurring in the judgment)).

13

In *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021), we reasoned that this Fourth Amendment distinction also affects the scope of *Bivens*. We observed that *Bivens* "involved . . . the Fourth Amendment right to be free of unreasonable *warrantless* searches and seizures," yet *Annappareddy* "involve[d] searches and a seizure conducted *with* a warrant." 996 F.3d at 135. Even though the *Annappareddy* warrants were based on "material false statements and omissions," *id.* at 127, we stressed that "the Fourth Amendment sharply distinguishes between with-warrant and warrantless searches, treating the introduction of the warrant as a signal moment in the proceedings," *id.* at 135–36. For that reason, we explained, "the 'right at issue'" in a warranted-seizure case is "meaningfully different from the one at issue" in a warrantless-seizure case. *Id.* at 136 (quoting *Abbasi*, 582 U.S. at 140).

We reaffirmed this distinction in *Hicks*. "*Bivens* involved . . . the right to be free from *warrantless* searches and seizures." *Hicks*, 64 F.4th at 167. But "searches authorized by a warrant" are different because "the decision to issue a warrant involves different aspects of police work, including 'information-gathering and case-building activities,' which are different from the warrantless apprehension, detection, and other issues presented in *Bivens*." *Id.* (quoting *Annappareddy*, 996 F.3d at 136).

Today we again rely on this principle. The Task Force officers had a warrant to search for Trinidad.[5] Under our precedents, that warrant means Orellana's case involves a different right—and different policy implications—than *Bivens*. *See Hicks*, 64 F.4th at 167

---

[5] Unlike *Annappareddy*, no defect in the warrant is alleged here.

14

(explaining that *Annappareddy* and *Bivens* did not involve "the same principles of constitutional criminal law"). And under Supreme Court precedent, that is enough to make this a new context. *Abbasi*, 582 U.S. at 148; *see Hernandez*, 589 U.S. at 103.

*

To be sure, this case is not entirely unlike *Bivens*. But "[w]hen one or more meaningful differences exist, it is not enough to identify a few similarities." *Ahmed*, 984 F.3d at 570. The Task Force's unique statutory mandate and the federalism concerns it raises, plus its warrant to enter Orellana's home, make this a new *Bivens* context twice over. We therefore conclude that the district court erred when it determined that this case fell within the original *Bivens* cause of action.

### D.    Special factors counsel against extending *Bivens* into this new context

Since we have determined that green-lighting Orellana's claim would extend *Bivens* to a new context, we proceed to step two and ask whether special factors counsel against extending it. Although the Court "has not defined the phrase 'special factors counselling hesitation,'" *Abbasi*, 582 U.S. at 136, it has made clear that "separation-of-powers principles" are the "central" consideration. *Hernandez*, 589 U.S. at 102 (quoting *Abbasi*, 582 U.S. at 135); *Goldey*, 606 U.S. at 944. "[I]f there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate,'" or that there is even a "'*potential*' for such consequences," we won't allow the plaintiff a *Bivens* remedy. *Egbert*, 596 U.S. at 496 (first quoting *United States v. Stanley*, 483 U.S. 669, 683 (1987); then quoting *Abbasi*, 582 U.S. at 145); *see also Mays*, 70 F.4th at 205 (explaining that "*even a*

15

*single reason* to pause" obligates us to stay our hand (quoting *Egbert*, 596 U.S. at 492)). We do not "assess the costs and benefits of" those reasons. *Egbert*, 596 U.S. at 496. Our sole task is to identify whether "even one" such reason exists. *Id.* If one does, we "cannot afford a plaintiff a *Bivens* remedy." *Id.*

We see multiple reasons here. For one, extending *Bivens* could interfere with the relationship between the Marshals Service and its state and local partners by exposing individual officers to potential loss. *See Logsdon*, 91 F.4th at 1358 ("Chilling participation in joint task forces is therefore a potential cost of expanding *Bivens* to Deputy U.S. Marshals."); *see also* 28 C.F.R. § 50.15(c)(1) ("The Department of Justice *may* indemnify [employees] . . . provided that the conduct . . . was taken within the scope of employment and that such indemnification is in the interest of the United States." (emphasis added)). This risk of liability may also affect the way officers do their jobs. *See Egbert*, 596 U.S. at 499 (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). More still, as the Eleventh Circuit observed, "Congress and the Executive Branch have created at least two administrative procedures to review complaints of excessive force arising out of USMS-led task force actions." *Robinson*, 102 F.4th at 1346. The existence of such alternative remedial procedures counsels against allowing *Bivens* suits even if such "procedures are 'not as effective as an individual damages remedy.'" *Goldey*, 606 U.S. at 945 (quoting *Egbert*, 596 U. S. at 498).

Other reasons to pause doubtless exist. But we need not scrutinize them all; even one "rational reason" is enough. *Egbert*, 596 U.S. at 492. As in most every case, Congress

is better suited to assess the consequences of extending *Bivens* to this new context. So we decline to do so.

*          *          *

Evy Orellana suffered serious injuries when a tactical canine bit her as a U.S. Marshals Fugitive Task Force executed a warrant to arrest her boyfriend. Although the incident is tragic, it does not fall within the original *Bivens* cause of action. This is a new context because the officers operated under a narrow and distinct statutory mandate and because they were executing a warrant. And the Supreme Court has repeatedly counseled against extending *Bivens* beyond the original case. Congress remains better suited to weigh the consequences of extending *Bivens* into this new context; so we may not judicially extend it. The decision below is

*REVERSED.*

17

GREGORY, Circuit Judge, dissenting:

The majority has found that Evy Orellana does not have a cause of action under *Bivens*, holding, amongst other things, that "allowing a *Bivens* remedy here would expand it into a new context." Maj. Op. at 11. But Orellana's claim fits well within the context of *Bivens* itself. I therefore dissent.

To begin, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied cause of action, grounded in the Fourth Amendment, against six Federal Bureau of Narcotics agents in their individual capacities. There, the agents had shackled the defendant in front of his family, threatened to arrest his entire family, searched his apartment without a search warrant, and arrested him for alleged narcotics violations without a warrant or probable cause. *Id*. at 389.

This is materially no different than the claim Orellana has brought against the U.S. Marshals. First, the fact that Orellana's claim against the U.S. Marshals asserts a constitutional right implicated in *Bivens* itself is a factor that weighs heavily in favor of finding that Orellana's claim arises in the *Bivens* context. Specifically, Orellana—like the plaintiff in *Bivens*—argues that the arresting federal agents used unreasonable force in attempting to make an arrest. This type of claim is permissible in the *Bivens* context, as the *Bivens* Court found that the plaintiff was entitled to recover for "any injuries . . . suffered as a result of the agents' violation of the Fourth Amendment[,]" including injuries arising from the plaintiff's claim "that unreasonable force was employed in making the arrest." *Bivens*, 403 U.S. at 389, 397. The mere fact that this case involves a warrant does not impact the *Bivens* inquiry or make it materially different. This is because Orellana is

18

not challenging the existence, issuance, or execution of the warrant, or any information gathering and case-building activities. Rather, Orellana's claim is directly on par with *Bivens* itself as her claims are grounded in unreasonable seizure and whether the force applied by the U.S. Marshals was reasonable under the circumstances. *Snowden v. Henning*, 72 F.4th 237, 247 (7th Cir. 2023), *cert. denied sub nom. Henning V. Snowden*, No. 23-976, 2024 WL 4426536 (U.S. Oct. 7, 2024) (stating the fact that an officer had a warrant was "not sufficient to affect the *Bivens* inquiry"); *see also Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1357 (10th Cir. 2024) (finding, in the context of determining whether a cause of action existed under *Bivens*, that a warrant had "no legal significance in an excessive-force case").

Second, just as in *Bivens*, this case involved the same type of federal officers—namely, arresting agents—who carried out the same type of "official action"—namely, effecting an arrest. *See Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017). Indeed, our own precedent even recognizes that, pursuant to *Bivens*, plaintiffs can hold federal agents conducting routine police work accountable for violations of the Fourth Amendment. *See Hicks v. Ferreyra*, 965 F.3d 302, 311 (4th Cir. 2020) (finding plaintiff's case "appear[ed] to represent not an extension of *Bivens* so much as a replay" as plaintiff sought "to hold accountable line-level agents of a federal criminal law enforcement agency, for violations of the Fourth Amendment, committed in the course of a routine law-enforcement action"); *see also Annappareddy v. Pascale*, 996 F.3d 120, 134-35 (4th Cir. 2021) (finding plaintiff's claims presented a new context of *Bivens* on other grounds but held plaintiff's claims resembled *Bivens* because plaintiff sought "to hold accountable only line-level

19

investigative officers, not high-ranking officials"). In addition, allowing Orellana to proceed with her *Bivens* claim would not risk "disruptive intrusion by the Judiciary into the functioning of other branches," *Abbasi*, 582 U.S. at 140, and the majority does not even plausibly suggest that "state-federal relations" would be "on the line," *see* Maj. Op. at 13, if Orellana's claim was allowed to proceed.

Third, finding that Orellana's claim falls within *Bivens* itself would not disrupt legitimate distinctions between Fourth Amendment claims that fall within the contours of *Bivens* and those that do not. This is because the Supreme Court, as well as this Court, has made clear that a *Bivens* claim is not permissible if the conduct at issue arises in different circumstances that had not been previously contemplated in prior *Bivens* actions. But, in contrast, it has been a longstanding practice to permit *Bivens* claims arising from the use of excessive force in an arrest, as Orellana asserts. In other words, the claim that Orellana has brought against the U.S. Marshals is not new and would not run afoul any standing precedent.

The "distinctions" highlighted by the majority—namely, the existence of a warrant and the fact that this case involves U.S. Marshals, *see* Maj. Op. at 3—are insufficient to overcome the aforementioned factors that heavily weigh in favor of finding there is no meaningful difference between the context of *Bivens* and that of this case. As such, Orellana should be permitted to move forward with her *Bivens* claim. Therefore, I dissent.