*251 GREGORY, Chief Judge:
Plaintiff-appellant April Yvette Smith brought a suit under 42 U.S.C. § 1983 alleging violations of her constitutional rights when she was arrested and held in police custody for eighty days. She named as defendants the investigating officers, Defendants Jason Munday and Charles McGinley; the arresting officers, Defendants Brian Greene and Mark Lesassier; the Chief of Police, Defendant Rodney Jordan; the City of Lincolnton; and the Lin-colnton Police Department.[1] She raised Fourth Amendment and tort claims in both direct and supervisory contexts, all of which center around the allegation that she was arrested without probable cause.
The district court found that the officers had probable cause to believe that Smith illegally possessed and sold crack cocaine. Thus, no officers violated her constitutional rights or caused her injury, and neither their supervisor nor employer failed to prevent such injuries. The district court accordingly granted summary judgment in favor of all of the defendants. We reverse and remand for further proceedings.
I.
When reviewing a grant of summary judgment, we “view all reasonable inferences drawn from the evidence in the light that is most favorable to the non-moving party.” Nader v. Blair, 549 F.3d 953, 958 (4th Cir. 2008).
On March 10, 2009, officers Munday and McGinley conducted an undercover investigation using a confidential informant, Rufus Lynch Sr. J.A. 84, 105. The officers searched Lynch, wired him with audio and video recorders, and gave him sixty dollars. J.A. 84-85. Lynch then went to 728 East Pine Street, where he purchased crack cocaine from two individuals. J.A. 85. After the transaction, Lynch returned to the officers. Id. He told the officers that he purchased drugs from April Smith, a black female. Id. The detective’s notes identify April Smith as such: “B/F April Smith,” and “April B/F skinny $20 1 rock in plastic, Smith 40s.” Supp. J.A. 17.
Because the audio recorder had no batteries, it failed to record the transaction. Supp. J.A. 17. And because the camera wired to Lynch pointed in the wrong direction, the video recording did not capture the drug sale. J.A. 85. The video instead shows an unidentified black woman sitting on a front porch, and two other individuals standing on the porch. J.A. 79. It also recorded a discussion of prices. Id.
At some point during the next nine months, Munday scanned police databases for residents of Lincoln County named April Smith with criminal records. He then stumbled upon April Yvette Smith, a black woman who lived in Lincoln County and had been convicted of selling crack cocaine in 1993, 1997, and 2005. His search also revealed at least two other April Smiths with criminal records. Supp. J.A. 40-41. He had no indication that the woman who sold crack cocaine to Lynch in March 2009 had a criminal record, or was even a Lincoln County resident. And the record reflects no further attempt by Munday to investigate Smith or connect her to the crime.
Nevertheless, nine months after the sale, on December 20, 2009, Munday applied for and received an arrest warrant *252 for Smith, on charges of possession with intent to sell crack cocaine and selling or distributing cocaine. Supp. J.A. 77. And on December 22, 2009, Defendants Greene and Lesassier served the arrest warrant and arrested Smith in her home, which was eleven miles away from the site of the drug sale. See Supp. J.A. 86. Smith was held in custody for approximately eighty days, facing the threat of prosecution. Over the course of her incarceration, Smith allegedly lost her job. J.A. 43. The Lincoln County District Attorney’s Office then requested that the charges be dismissed.
Smith filed suit, alleging constitutional violations of the Fourth and Fourteenth Amendments,[2] and state-law claims for intentional or negligent infliction of emotional distress, negligence, negligent supervision, gross negligence, assault, battery, false imprisonment, and false arrest.
The district court found that no constitutional violation occurred. The district court reasoned that the investigating officers were looking for a black woman named April Smith who sold drugs, and they found a black woman named April Smith who had sold drugs in the past, and who was arrested only eleven miles away from where the drug sale occurred. The one factor the district court believed counseled against probable cause was Smith’s weight. The seller was a skinny woman; conversely, Smith was 160 pounds upon arrest, and alleged that she weighed more than 200 pounds in March 2009, when the sale occurred. But the officers were unaware of Smith’s weight at the time of the transaction, and the district court reasoned that 160 pounds was not so different from “skinny,” especially with an intervening nine months, so as to discredit a finding of probable cause. Thus, even if she ultimately might not have been the correct individual, the district court found that — at the time, with the information then known— the investigating officers had probable cause to believe that Smith was the woman who sold Lynch crack cocaine.
But even ignoring Smith’s weight, a criminal history, common race, common gender, and unfortunately common name is not enough to establish probable cause. For this reason, we reverse the district court and remand for further proceedings.
II.
We review a district court’s grant of summary judgment de novo. Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 817 (4th Cir. 1995). Summary judgment should be granted only when “the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All “factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion.” Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).
A.
The district court properly stylized Smith’s false arrest claims against the investigating officers as malicious prosecution claims. J.A. 107. A claim of malicious prosecution under § 1983 is a claim “founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prose *253 cution.” Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). This Fourth Amendment claim requires “that [1] the defendant ha[s] seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiffs favor.” Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014) (quoting Durham v. Homer, 690 F.3d 183, 188 (4th Cir. 2012)).
Here, the sole question at issue is whether there was probable cause to arrest Smith. Probable cause is determined by a “totality-of-the circumstances” approach. Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). “While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict.” United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998) (internal quotation marks omitted). “It is an objective standard of probability that reasonable and prudent persons apply in everyday life.” Id.
The probable-cause inquiry turns on two factors: “the suspect’s conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.” Graham v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016) (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)). A court should only consider the information the officers had at the time they sought the warrant. Id. Yet the probable-cause inquiry “examine[s] the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; we do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause.” Id. at 185 (quoting Gray, 137 F.3d at 769).
When applying for an arrest warrant, Munday simply did not have enough information for any reasonable or prudent person to believe there was probable cause. He lacked any information connecting Smith’s conduct to the contours of the offense, and certainly lacked enough evidence to create any inference more than mere suspicion.
Of the offense, Munday knew only that Lynch, a confidential informant used by members of the police department before but new to him, said “April Smith,” a skinny, black woman, sold him crack cocaine. He did not know if she had been convicted for selling crack cocaine before or if she lived in the county.
But to find the offender, Munday merely ran a broad search in the department’s database of individuals with criminal histories, looking for a woman of the same name. And when he found multiple individuals, at least two of whom were black women named April Smith weighing between 130 and 140 pounds, he chose one for no immediately apparent reason. Oral Argument at 18:40, Smith v. Munday (4th Cir. Sept. 20, 2016) (No. 15-1092), http:// www.ca4.uscourts.gov/oral-argument/ listen-to-oral-arguments (recording Mun-day’s lawyer admitting that Munday searched a criminal history database to find the offender and found three April Smiths with criminal histories residing in Lincoln County); see also Supp. J.A. 40-41 (listing excerpts of case report, including criminal database results revealing at least two black women named April Smith weighing between 130-140 pounds, filed as exhibits to Munda/s sworn affidavit). There is no evidence that Munday attempted to identify Smith as the black woman in the video footage. There is no evidence that the officers showed Lynch a photo of Smith to establish the identification. There is no evidence that the officers investigated Smith herself, or found any indication that Smith frequented the site of *254 the drug sale that day, that month, or at all. Indeed, there is no explanation whatsoever for the nine-month delay between Lynch saying a black woman named April Smith sold crack cocaine to him and the issuance of an arrest warrant for April Yvette Smith.
In short, Munday had no evidence about Smith’s conduct, let alone whether she was a participant in, connected to, or even physically present near the drug sale in question. His only information about Smith was that she had previously been convicted for selling drugs years past, that she was a black woman, and that she was “near” the site of the drug sale because her home address was eleven miles away. If this amount of evidence were sufficient for probable cause, then officers would have probable cause to obtain arrest warrants for any local residents who fit the generic description of the day — be it “black woman,” “black man,” or otherwise — so long as they had a criminal history and an unfortunately common name. Such scant evidence barely meets the threshold of “mere suspicion,” let alone the threshold of probable cause.
An investigating officer need not “exhaust[ ] every potential avenue of investigation.” Wadkins v. Arnold, 214 F.3d 535, 543 (4th Cir. 2000). But an investigating officer must still conduct some sort of investigation and assemble individualized facts that link the suspect to the crime.
In Thompson v. Prince William County, 753 F.2d 363 (4th Cir. 1985), this Court found that probable cause supported an arrest warrant for Lisa Ann Thompson, even though — as it turned out — she was the wrong person. There, an undercover police agent saw Thompson driving through a parking lot and recorded her license plate number. Id. He then purchased marijuana from a woman who identified herself as “Lisa,” id. at 364, and he believed that she was the same woman he had seen driving earlier. After the sale, he ran the car’s license-plate number through a motor-vehicle database and found that the owner of the car was Lisa Ann Thompson. Id. A police informant, who worked as a bouncer at a nearby restaurant, also told the officer that the woman driving the car was named Lisa. Id. The officer obtained an arrest warrant for Lisa Ann Thompson, and she was arrested. Id. at 365. Ultimately, the officer was mistaken; Thompson was not the woman he purchased drugs from. Yet this Court found that the officer had probable cause to obtain an arrest warrant at the time because he took reasonably prudent steps to determine that he was arresting the correct person.
In Thompson, the police officer used multiple methods to establish the arres-tee’s identity, and he himself (mistakenly) identified her as the woman he purchased drugs from. Though in error, he connected the woman he arrested to the crime by his own identification of her as a co-participant in the transaction. The equivalent mistake here would be if Munday showed Lynch a photo of Smith, and Lynch mistakenly believed that Smith was the woman he purchased crack cocaine from. But here, Munday made no attempt to connect Smith to the crime. And he had no evidence whatsoever connecting Smith to the crime. Thus, Munday had no probable cause to seek an arrest warrant.
And in Durham v. Horner, 690 F.3d 183 (4th Cir. 2012), this Court affirmed the district court’s granting of summary judgment based on qualified immunity because there was probable cause for an ultimately erroneous arrest. There, a confidential informant purchased drugs in Big Stone Gap, Virginia, from an “old man,” identified thrice as Michael Dwayne Durham, who drove a Jeep with a stolen Tennessee license plate. Id. at 185. The investigating *255 officer, Horner, used a Social Security Number he received from the Task Force for that name, as well as two internet investigative resources, Aecurint and VCIN, to identify the offender. Horner found a forty-five-year-old man named Michael Dwayne Durham with Tennessee DMV records, a purchased Jaguar, and addresses in Virginia (including Big Stone Gap) and Tennessee. Id. at 185-86. Durham also had state convictions for possession of drug paraphernalia. Id. at 186. After conducting the investigation, Horner took no role in further proceedings. Id. A grand jury subsequently returned three indictments against Durham for felony drug distribution. Durham was arrested and later released because he was the wrong person. Id. at 187.
By law, “an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause.” Id. at 189 (quoting Gerstein v. Pugh, 420 U.S. 103, 117 n.19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)). In Homer, a proper indictment by a grand jury conclusively proved that there was probable cause. Conversely, here, Munday sought no indictment by grand jury. As a result, Durham’s “primary problem,” that a grand jury found probable cause, is inapposite to Smith’s case. Id. And since the record did not reveal any way in which Horner participated in the indictment proceeding, the grand jury’s determinations, not Horner, were the proximate cause of the arrest; conversely, Munday drafted and submitted the application for an arrest warrant.
And even if the court looked beyond the dispositive nature of the indictments, Hor-ner had a first, middle, and last name; Munday had only a common first name and a common last name. There is no evidence that Horner or the Task Force found multiple individuals by that name; Munday s counsel admits that even an area as small as Lincoln County had three April Smiths with criminal histories. Horner found an individual whose prior residence and DMV record matched the state of the seller’s stolen car; Munday had no such identifying information connecting Smith to the crime, other than a common name, gender, race, and generic description as “skinny.” “Horner was ‘not required to exhaust every potentially exculpatory lead or resolve every doubt’ ” to show probable cause. Id. at 190 (quoting Miller v. Prince George’s County, 475 F.3d 621, 630 (4th Cir. 2007)). But he still had to conduct some level of investigation. And he did. Munday conducted none.
A magistrate judge’s approval of the arrest warrant does not'alter this conclusion. We generally accord great deference to a magistrate judge’s determination of probable cause, but that deference is not “boundless.” United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting Spinelli v. United States, 393 U.S. 410, 417, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). “[C]ourts must also insist that the magistrate purport to ‘perform his neutral and detached function and not serve merely as a rubber stamp for the police.’ ” Id. (quoting Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)). Here, the evidence placing Smith at the crime is so scant — indeed, it is nonexistent — that deferring to the magistrate judge would be inappropriate. Mun-day’s application for an arrest warrant lacked probable cause and thus violated Smith’s Fourth Amendment rights.
B.
Having found that no probable cause existed for the warrant, the next question is whether Munday is entitled to qualified immunity. “Where the alleged Fourth Amendment violation involves a *256 search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in ‘objective good faith.’ ” Messerschmidt v. Millender, 565 U.S. 535, 132 S.Ct. 1235, 1245, 182 L.Ed.2d 47 (2012) (quoting Leon, 468 U.S. at 922-23, 104 S.Ct. 3405). But there is an exception to this general rule. Qualified immunity does not apply “where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.” Malley v. Briggs, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
A warrant is so deficient in indicia of probable cause when it has an “error that is apparent from a ‘simple glance’ at the face of the warrant itself, not a defect that would ‘become apparent only upon a close parsing of the warrant application.’ ” Armstrong v. Asselin, 734 F.3d 984, 992 (9th Cir. 2013) (quoting Messerschmidt, 132 S.Ct. at 1250). And here, even a glance shows that Munday was unreasonable if he believed he had probable cause. Smith did have a criminal history for possessing and selling cocaine. But as discussed above, Munday had no evidence about her conduct whatsoever, let alone any evidence connecting her to the crime in question. It would be unreasonable for any officer to view Munday’s dearth of evidence as sufficient to establish probable cause. As a result, qualified immunity does not apply.
When the Supreme Court established this reasonableness standard, it articulated why the law should hold officers accountable for unreasonable warrant applications:
True, an officer who knows that objectively unreasonable decisions will be actionable may be motivated to reflect, before submitting a request for a warrant, upon whether he has a reasonable basis for believing that his affidavit establishes probable cause. But such reflection is desirable, because it reduces the likelihood that the officer’s request for a warrant will be premature. Premature requests for warrants are at best a waste of judicial resources; at worst, they lead to premature arrests, which may injure the innocent or, by giving the basis for a suppression motion, benefit the guilty.
Malley, 475 U.S. at 343-44, 106 S.Ct. 1092. Those very same reasons are equally applicable here. The warrant issued in this case was wholly unreasonable. And the premature, or simply insufficient, request for a warrant in this case resulted in Smith’s eighty-day incarceration under threat of prosecution and alleged loss of her job. Had Munday more carefully reflected on his warrant application, perhaps these injuries could have been avoided.
C.
For these reasons, we hold that Munday violated Smith’s Fourth Amendment rights when he applied for an arrest warrant that wholly lacked probable cause. The district court had previously found that Smith’s state-law claims against all of the individual officers, and negligent-supervision and pattern- or-practice theories of liability against the Chief of Police and City of Lineolnton failed because no constitutional violation occurred. J.A. 111-14. Because this reversal implicates those rulings, we remand to the district court so it can examine its prior determinations in the first instance.
Smith also brought claims against the Lineolnton Police Department. But a governmental entity may only be sued if the law of the state in which the court is located permits it. Fed. R. Civ. P. 17(b)(3). Under North Carolina law, police departments cannot be sued as entities. See Ost- *257 walt v. Charlotte-Mecklenburg Bd. of Educ., 614 F.Supp.2d 603, 607 (W.D.N.C. 2008); Wright v. Town of Zebulon, 202 N.C.App. 540, 688 S.E.2d 786, 789 (2010). Therefore, we affirm the district court’s dismissal of claims against the Lincolnton Police Department.
III.
Smith also brought a claim for false arrest against her arresting officers, Greene and Lesassier. A claim for false arrest alleges that a warrantless arrest lacked probable cause; a claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause. See Brooks v. City of Winston-Salem, 85 F.3d 178, 181-82 (4th Cir. 1996). Here, Greene and Lesassier merely executed the arrest as they were required to do, pursuant to a facially valid warrant, so her false arrest claim is improper.[3] As a result, we affirm the district court on this claim.
IV.
For the foregoing reasons, the district court’s decision is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. Smith also named the confidential informant, Rufus Lynch, as a defendant, but voluntarily dismissed him. J.A. 4-5.

. Smith also raised Fifth Amendment claims. But her Fifth Amendment claims were identical to her Fourth Amendment claims, and otherwise not discussed.

. Even if Smith had raised a malicious prosecution claim, her claim would still likely have failed. Although the arrest warrant lacked probable cause, the arresting officers were unaware of the scant factual basis supporting the facially valid warrant. Looking at the information they knew at the time, the officers acted reasonably when relying on the warrant. See Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) (officers who arrested Plaintiff pursuant to facially valid warrant receive qualified immunity from malicious prosecution claim because a reasonable person would not have known he was violating a clearly established right).