**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1547

JOHN SCOTT MORETTI,

Plaintiff – Appellant,

v.

DETECTIVE HELGA THORSDOTTIR,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Patricia Tolliver Giles, District Judge.  (1:23-cv-00020-PTG-IDD)

Argued:  May 6, 2025                                          Decided:  October 15, 2025

Before KING, THACKER, and BERNER, Circuit Judges.

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Thacker and Judge Berner joined.  Judge Thacker wrote a concurring opinion, in which Judge Berner joined.

**ARGUED:**  Alan Michael Mygatt-Thauber, PALADIN LAW OFFICE PLLC, Silverdale, Washington, for Appellant.  Tara Jeannine Mooney, PRINCE WILLIAM COUNTY ATTORNEY'S OFFICE, Prince William, Virginia, for Appellee.  **ON BRIEF:**  Joshua Erlich, Katherine L. Herrmann, THE ERLICH LAW OFFICE, PLLC, Arlington, Virginia, for Appellant.  Deborah K. Siegel, PRINCE WILLIAM COUNTY ATTORNEY'S OFFICE, Prince William, Virginia, for Appellee.

KING, Circuit Judge:

By his operative Amended Complaint, initiated in the Eastern District of Virginia in February 2023, John Scott Moretti alleges state and federal malicious prosecution claims against Detective Helga Thorsdottir of the Prince William County Police Department. *See Moretti v. Thorsdottir*, No. 1:23-cv-00020 (E.D. Va. Feb. 23, 2023), ECF No. 10 (the "Complaint"). For reasons stated from the bench during a hearing on April 27, 2023, and as memorialized in a written order entered that day, the district court dismissed the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. *See Moretti v. Thorsdottir*, No. 1:23-cv-00020 (E.D. Va. Apr. 27, 2023), ECF No. 17 (the "Dismissal Order").

In this appeal by Moretti from the Dismissal Order, the critical question is whether the Complaint plausibly alleges a lack of probable cause for Moretti's arrest and prosecution to support his malicious prosecution claims. As explained herein, we agree with the district court that it does not do so, and therefore affirm the dismissal.

I.

A.

We begin by reciting the facts alleged in the Complaint, which we accept as true and view in the light most favorable to Moretti. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 680 (4th Cir. 2018) ("Because the district court dismissed the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, we accept and recite the alleged facts in the light most favorable to the plaintiff[]."). In reciting these facts, we also

2

evaluate the exhibits to the Complaint. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.").

1.

In June 2018, the Prince William County Police Department (the "Department") received a referral from Child Protective Services ("CPS") concerning allegations of sexual abuse of a minor child referred to herein as "Jane Doe."[1]  According to the report of Detective Alfaro, who was assigned to the case at the time, CPS emphasized comments made by Doe in an online chat to a suicide hotline expressing that she was sexually abused by "her father's friend" between the ages of 8 to 12 and that the alleged offender was now "living in her home again." *See* Complaint ¶ 26(a)-(b) (emphasis omitted).  Alfaro's report mentioned Doe's correspondence with the suicide hotline, but did not include a transcript thereof.  The Department soon moved the case to inactive status after Doe refused to discuss the allegations or identify her alleged abuser in a police interview.

In September 2019, Doe was committed to a residential treatment facility after she attempted suicide.  While in treatment, Doe advised a therapist that she was sexually abused by a man named "Scott Moretti" when she was between the ages of 8 to 12.  *See*

---

[1] We refer to the juvenile accuser as "Jane Doe" to protect her privacy, consistent with our precedent. *See, e.g., Doe v. Sidar*, 93 F.4th 241, 248 (4th Cir. 2024) (explaining that use of "fictitious names" is favored "when necessary to protect the privacy" of minors (internal quotation marks omitted)).

Complaint Ex. C, at 1. The therapist reported Doe's disclosure to the National Center for Missing and Exploited Children, who in turn contacted the Department.

Detective Thorsdottir was assigned to the case on September 16, 2019, and promptly reviewed the 2018 investigation report prepared by Detective Alfaro. On September 23, 2019, Thorsdottir conducted a child forensic interview with Doe. Doe's therapist was also present and was permitted to speak to and interact with Doe throughout the interview. According to Thorsdottir's report, Doe named Moretti as her abuser and detailed multiple instances of sexual abuse and threats that occurred years earlier while Doe was at Moretti's home to play with Moretti's daughter.[2] Doe specifically recounted an instance where Moretti "put [a gun] up to [her] head" and forced her to engage in a sex act. *See* Complaint Ex. C, at 3. On another occasion when Doe was approximately 9 years old, Moretti showed her a camera he had purchased for his daughter's birthday, and he took pictures of Doe after he "instructed" Doe to take off her clothes. *Id*. at 4. Doe recounted that the final incident of sexual abuse occurred when she was "12 and in the 6th grade." *Id*.

In total, Detective Thorsdottir's interview with Doe lasted more than five hours. At the conclusion of the interview, Thorsdottir had obtained six handwritten and signed statements that were completed by Doe while in residential treatment following the 2019 suicide attempt. Those statements detailed various instances of sexual abuse. One statement indicated that Moretti had taken sexually explicit pictures of Doe. Moretti

---

[2] We observe that substantial portions of the copy of Detective Thorsdottir's report, as attached as an exhibit to the Complaint, have been redacted.

4

alleges, however, that Doe's therapist shared "inconsistencies between Doe's description of two specific incidences of sexual abuse" between what Doe shared in therapy and in the police interview, and that Thorsdottir failed to document these discrepancies in her report. *See* Complaint ¶¶ 46-50.

On September 30, 2019, Detective Thorsdottir interviewed Doe's parents. Doe's parents stated that the family moved into the neighborhood when Doe was in 2nd grade, and that Doe and Moretti's daughter quickly became friends. Doe's parents shared with Thorsdottir that Doe would "spend a lot of time" at Moretti's home, including "spending the night," but stated that they themselves had no contact with Moretti. *See* Complaint Ex. C, at 6. Doe's parents also indicated that Moretti had engaged in behavior that Thorsdottir described in her report as "peculiar," such as parking unnecessarily in front of their house and staring at the house when Doe was home. *Id*. Doe's parents advised Thorsdottir that Doe had ceased being close to Moretti's daughter around the 7th grade.

On October 14, 2019, Detective Thorsdottir contacted Ms. Combs, a clinical therapist referenced in the Department's 2018 report, who treated Doe after her 2018 suicide attempt. Combs shared with Thorsdottir that, in April 2018, Doe disclosed that she was sexually abused by a "father of a friend" when she moved into a new neighborhood when she was approximately 8 years old. *See* Complaint Ex. C, at 9. According to Combs, Doe shared that the abuse began shortly after Doe moved to the area and made her first friend. Doe informed Combs that her new friendship with her neighbor was very important to her and that Doe would try to visit her friend when the friend's father was not home.

5

Thorsdottir had previously discovered that Moretti worked for the federal government and that he often travelled for work.

Shortly thereafter, Detective Thorsdottir began surveillance of Moretti's home and sought approval from her Department colleague, Ms. Tyrell, to seek warrants for a search of Moretti's residence and person. Tyrell expressed concern about seeking the search warrants due to her belief that additional information was needed, specifically about the circumstances under which Doe had identified Moretti and Doe's previous disclosure of the abuser as "a friend of her father that lived in the home." *See* Complaint ¶ 63(a)-(e). Tyrell recommended that further investigation be conducted prior to seeking any search warrants.

On November 11, 2019, Detective Thorsdottir interviewed Moretti, who fully cooperated with the investigation. During the interview, Moretti denied having ever abused Doe but admitted that he had a daughter approximately the same age as Doe, that the two girls were friends, and that Doe had visited his home. That same day, Thorsdottir obtained from a Virginia magistrate two search warrants: (1) for Moretti's person, listing the criminal offense for which evidence was being sought as forcible sodomy, in contravention of Virginia Code Section 18.2-67.1; and (2) for Moretti's residence, listing the criminal offense for which evidence was being sought as possession of child pornography, in contravention of Virginia Code Section 18.2-374.1. Pursuant to those warrants, officers located and seized a handgun in Moretti's home. Cellphones, laptops, tablets, documents, SD cards, and thumb drives were also seized during the searches. A forensic search of Moretti's electronic devices for evidence of child pornography was

completed in April 2020, but no information relevant to Thorsdottir's investigation was found. Photographs of Doe were submitted to the National Center for Missing and Exploited Children to determine if the organization was aware of the existence of any sexually explicit material of Doe. Those results were also negative.

2.

On May 5, 2020, Detective Thorsdottir filed a criminal complaint with a local Prince William County magistrate seeking warrants for Moretti's arrest. The magistrate found that probable cause existed and issued an arrest warrant for the offenses identified in Thorsdottir's criminal complaint: (1) forcible sodomy, in violation of Virginia Code Section 18.2-67.1; and (2) indecent liberties with a child, in violation of Virginia Code Section 18.2-370. Moretti was arrested the same day. On August 3, 2020, a grand jury in Prince William County indicted Moretti for, inter alia, forcible sodomy and indecent liberties with a child.

On January 29, 2021, the Commonwealth Attorney's Office produced discovery to Moretti's defense counsel, including Detective Alfaro's report of his 2018 investigation. That was the first time Moretti's counsel learned that Doe had previously described her abuser as her "father's friend." *See* Complaint ¶ 98. On May 28, 2021, Assistant Commonwealth Attorney Lowe provided Moretti's counsel with the 2018 CPS report, indicating that she had "just received it" from Detective Thorsdottir. *Id*. at ¶ 105. The CPS Report did not include a transcript of Doe's online chat with the suicide hotline, and Moretti's counsel later secured the transcript by issuing a subpoena to the mental health organization with whom Doe interacted.

7

The suicide hotline transcript revealed that Doe provided additional details about her abuser that were not documented in Detective Alfaro's 2018 report.  Specifically, Doe told the hotline operator (1) that her abuser was Doe's father's best friend; (2) her abuser was the best man at Doe's parents' wedding; (3) her abuser had moved away but was returning to the area in July 2018; and (4) her abuser had attended a wedding reception with Doe and her family in 2015.[3]

On January 4, 2022, ACA Lowe moved to *nolle prosequi* the Commonwealth's case against Moretti, and an order granting the motion was entered that same day.[4]  In a letter to the court, Ms. Lowe explained that "[t]hese messages clearly show the victim naming another individual besides the defendant as her abuser in detail in June of 2018." *See* Complaint Ex. I, at 1.  The letter also stated that "[t]he victim is no longer willing to go forward with the prosecution." *Id*.

B.

This civil action was initiated by Moretti in the Circuit Court for Prince William County before its removal to the Eastern District of Virginia on January 6, 2023.  The Complaint alleged a malicious prosecution claim under Virginia common law and a Fourth

---

[3] The suicide hotline transcript was not an exhibit to the Complaint and is therefore not part of the record on appeal.  Our description of that transcript is drawn from the Complaint.

[4] An entry of *nolle prosequi* "generally does not act as an acquittal." *See Commonwealth v. Garrett*, 667 S.E.2d 739, 748 (Va. 2008).  Rather, "[u]nder Virginia procedure[,] a nolle prosequi is a discontinuance which discharges the accused from liability on the indictment to which the nolle prosequi is entered." *See Miller v. Commonwealth*, 234 S.E.2d 269, 273 (Va. 1977).

8

Amendment malicious prosecution claim under 42 U.S.C. § 1983. In March 2023, Detective Thorsdottir filed a Rule 12(b)(6) motion to dismiss, contending that Moretti failed to state a claim upon which relief can be granted and claiming qualified immunity.

On April 27, 2023, the district court conducted a hearing on Detective Thorsdottir's motion to dismiss. At the conclusion of the hearing, the court orally granted Thorsdottir's motion from the bench and dismissed the Complaint in its entirety. On both the state and federal claims, the court determined that Moretti had failed to plead sufficient facts to plausibly allege that Thorsdottir's investigation lacked probable cause. For similar reasons, the court ruled that Thorsdottir did not violate Moretti's constitutional right to be free from unreasonable seizure and therefore that Thorsdottir was entitled to qualified immunity on the § 1983 claim.

Moretti has timely noticed this appeal from the resultant Dismissal Order, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo the dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. *See Mylan Lab'ys., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Again, in conducting this review, we accept the complaint's factual allegations as true and view them in the light most favorable to the plaintiff. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 680 (4th Cir. 2018). We may also consider any exhibits attached to the complaint where they are integral to the complaint's allegations and no party in the litigation has challenged their authenticity. *See*

9

*Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). We are not obliged, however, to accept as true the allegations of the complaint that conflict with its exhibits. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached [to the complaint,] . . . the exhibit prevails." (internal quotations marks omitted)).

## III.

On appeal, Moretti challenges the dismissal of his federal and state malicious prosecution claims.[5] Although our analysis of the dismissal of these claims ultimately turns on the issue of probable cause, we address each of them in turn.

### A.

The district court dismissed Moretti's federal malicious prosecution claim by concluding that, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint failed to plausibly allege that Detective Thorsdottir lacked probable cause in seeking an arrest warrant and pursuing his prosecution. A federal malicious prosecution

---

[5] Moretti also challenges on appeal the district court's attendant determination that Detective Thorsdottir is entitled to qualified immunity from § 1983 liability. As discussed herein, because we are readily satisfied that the Complaint does not allege a violation of the Fourth Amendment and thus is subject to dismissal under Rule 12(b)(6), we need not address the court's qualified immunity ruling. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (explaining plaintiff must allege violation of clearly established statutory or constitutional right to overcome officer's assertion of affirmative defense of qualified immunity).

10

claim under 42 U.S.C. § 1983 is properly understood as a claim for unreasonable seizure in contravention of the Fourth Amendment. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected *without probable cause* is unreasonable." *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996) (emphasis added). As a result, the central issue in this appeal is whether the facts, as alleged in the Complaint and the exhibits attached thereto, plausibly allege a lack of probable cause.

To that end, probable cause does not command that a law enforcement officer know with perfect certainty that a crime has been committed. *See United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) ("While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." (internal quotations omitted)). That is, probable cause requires "only the probability, and not a prima facie showing, of criminal activity. . . ." *See Illinois v. Gates*, 462 U.S. 213, 235 (1983) (internal quotations omitted). This inquiry is governed by a "'totality-of-the circumstances' approach," which employs "an objective standard of probability that reasonable and prudent persons apply in everyday life." *See Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (quoting *Gray*, 137 F.3d at 769). When analyzing an allegation of a lack of probable cause, a court "should only consider the information the officers had at the time they sought the warrant." *Id.*

In this appeal, Moretti alleges that his seizure was unreasonable and unsupported by probable cause because it flowed from an inaccurate warrant affidavit. To state a claim on this theory, Moretti was obliged to plausibly allege that Detective Thorsdottir either

11

(1) deliberately or with reckless disregard for the truth made material false statements to obtain the arrest warrant; or (2) that she omitted from the affidavit "material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *See Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007) (internal quotation marks omitted).

1.

We will first assess whether the Complaint plausibly alleges that Detective Thorsdottir acted deliberately or with reckless disregard for the truth in submitting false statements to obtain a warrant for Moretti's arrest. To successfully plead that a police officer acted with "reckless disregard," the plaintiff must plausibly allege that the officer acted with a "high degree of awareness" of a statement's probable falsity, meaning that the officer "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information [s]he reported." *See Miller*, 475 F.3d at 627 (internal quotation marks omitted).

We are satisfied that the allegations of the Complaint and its exhibits — including Detective Alfaro's 2018 report and the report of Detective Thorsdottir — do not plausibly allege that Thorsdottir acted with a "high degree of awareness" that Doe's identification of Moretti as her abuser was probably false. Several facts support this crucial determination.

First, and most importantly, Doe identified her abuser as "Scott Moretti" in residential treatment prior to the Department's re-opening of the criminal case, and Doe confirmed that identification in her September 2019 forensic interview with Thorsdottir. *See Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) ("[I]t is difficult to imagine

12

how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim . . . ."). Not only that, but Doe provided Thorsdottir with detailed descriptions of her sexual abuse by her friend's father in her forensic interview, at least one of which was directly corroborated by statements Doe previously drafted while in residential treatment. *See* Complaint ¶ 56 ("One of Doe's handwritten statements alleged the existence of pornographic pictures of Doe taken by Mr. Moretti.").

Second, though Moretti contends that Detective Thorsdottir's investigation did not yield any evidence that Moretti sexually abused Doe, the Complaint and its exhibits demonstrate otherwise. To be sure, it was through Thorsdottir's investigation that she learned several facts supporting the warrant application, including (1) Doe's family resided close to Moretti's home, (2) Doe became close friends with Moretti's daughter upon moving into the neighborhood when Doe was in 2nd grade, (3) Doe occasionally spent the night at Moretti's home with Moretti's daughter, and (4) the timeline of Doe's friendship with Moretti's daughter aligned with the timeline of abuse detailed by Doe in her forensic interview.

Third, Detective Thorsdottir reviewed evidence collected by the Department in 2018 at the outset of her 2019 investigation, and she later contacted the clinical therapist referenced by the 2018 report. The clinical therapist, Ms. Combs, confirmed that Doe told her that she was sexually abused by the father of a friend, that the friendship was very important to her, and that she tried to visit her friend when her friend's father was not home. That information was relayed to Combs in 2018 — prior to Thorsdottir's investigation —

13

and it corroborated much of the information that Thorsdottir obtained in her interviews of Doe and Doe's parents, along with Thorsdottir's own discovery that Moretti had travelled frequently for work. Finally, a handgun was located in Moretti's home during execution of the search warrant, which was consistent with Doe's description of a handgun being used during one instance of sexual abuse. Put simply, it is impossible to imagine that the facts available to Thorsdottir at the time of her investigation did not create probable cause by demonstrating at least a "probability" of criminal activity. *See Gates*, 462 U.S. at 235.

Notwithstanding the foregoing, Moretti argues on appeal that the district court erred in ruling that the Complaint did not plausibly allege a lack of probable case because

> Thorsdottir provided in her warrant application that probable cause existed based on two facts alone: (1) that Jane Doe named Mr. Moretti as the perpetrator during [the forensic interview]; and (2) that a firearm was found in Mr. Moretti's residence during the execution of a search warrant.

*See* Br. of Appellant 19-20. Moretti further contends that the firearm found has no bearing on probable cause because Moretti was a law enforcement officer and nearly 50% of Virginians own a firearm. *Id*. at 21. Accordingly, Moretti maintains that Doe's identification of him as the perpetrator is the only evidence remaining to support Detective Thorsdottir's affidavit, and this identification by itself does not support a finding of probable cause.

We are unable to agree with Moretti. To be sure, the arrest warrant application, as an exhibit to the Complaint, recites that Doe described an incident when Moretti threatened her with a gun during an occasion of sexual abuse. The application then specified that a search warrant for Moretti's residence yielded multiple firearms. Taking these allegations

14

together — along with the information that was available to Detective Thorsdottir during her investigation, such as Doe's earlier identifications of her abuser to her therapists and the information provided by Doe's parents regarding Doe's friendship with Moretti's daughter — we cannot say that Doe's identification of Moretti as her abuser was unreliable, or that Thorsdottir had a "high degree of awareness" that Moretti was probably not Doe's abuser. *See Gates*, 462 U.S. at 235 ("We have also recognized that affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." (internal quotations omitted)).

In these circumstances, we agree with the district court that the Complaint has not plausibly alleged that Thorsdottir acted deliberately or with reckless disregard for the truth in submitting false information to obtain a warrant for Moretti's arrest.

2.

We turn next to the second question posed by Moretti's federal malicious prosecution claim:  whether Moretti plausibly alleges that Detective Thorsdottir omitted material facts in her arrest warrant affidavit that would negate probable cause. *See United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (establishing that a defendant can attack an affidavit "when affiants omit material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading" (internal quotations omitted)).  For an omitted fact to be "material," the "omission must do more than potentially affect the probable cause determination: it must be 'necessary to the [neutral

15

and disinterested magistrate's] finding of probable cause.'" *Id*. at 301 (quoting *Franks v. Delaware*, 438 U.S. 154, 156 (1978)).

To successfully allege that Detective Thorsdottir acted with reckless disregard with respect to the omission of material facts, the Complaint had to plausibly allege that Thorsdottir "failed to inform the judicial officer of facts [she] knew would negate probable cause." *See Miller*, 475 F.3d at 627 (internal quotations omitted). However, her omission of facts by mere negligence or "innocent mistake" could not provide a basis for a constitutional violation. *Id*. at 627-28 (quoting *Franks*, 438 U.S. at 171).

In that respect, Moretti argues that several facts were omitted from the arrest affidavit that would have negated a probable cause finding by the magistrate. Most notably, Moretti claims that Detective Thorsdottir withheld the CPS report that prompted the Department's initial 2018 investigation, as well as the transcript of Doe's suicide hotline chat containing a description of her abuser that, indisputably, could not possibly have referred to Moretti. At the court hearing on Thorsdottir's motion to dismiss, however, Moretti's counsel conceded that there is no evidence that Thorsdottir had the suicide hotline transcript at the time she sought the arrest warrant:

> COURT: [J]ust to be clear, you're not alleging that the transcript was in Detective Thorsdottir's possession?
>
> [COUNSEL]: No. We don't have any reason to believe that. The e-mail trail that we've received seems to indicate otherwise.

16

J.A. 179.[6]  Indeed, the Complaint fails to allege that Thorsdottir withheld that information in seeking the arrest warrant.  Rather, it merely alleges that the information from the CPS report was withheld during the course of the prosecution.  *See* Complaint ¶ 103 ("Despite having this exculpatory evidence which had been expressly requested by the defense, Det. Thorsdottir did not turn over the entirety of Det. Alfaro's investigative file to the Commonwealth Attorney's Office responsible for the prosecution of Mr. Moretti.").  Moretti has therefore failed to plausibly allege that the suicide hotline chat transcript negates probable cause for seeking and obtaining an arrest warrant.

The remaining omissions emphasized by Moretti focus heavily on the initial identification of the perpetrator as Doe's "father's friend" who had since moved away, returned to the area, and was now present in Doe's home again.  *See* Complaint, ¶ 93.  Moretti also alleges that the search warrants secured by Detective Thorsdottir did not yield any evidence of child pornography, and that none of the information Thorsdottir discovered in her investigation matched the description of the perpetrator in the initial 2018 tip.  *Id*.

Moretti's theory of the case presumes a degree of certainty that is inconsistent with the probable cause standard.  The exhibits to the Complaint indicate that Moretti had been named as Doe's abuser at least two separate times:  in the 2019 tip from Doe's residential therapist, and by Doe repeatedly in her September 2019 forensic interview with Detective

---

[6] Citations to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

17

Thorsdottir.[7]  Moreover, the exhibits to the Complaint contradict Moretti's arguments and establish that Thorsdottir's investigation *did* yield information that corroborated these identifications.  Most notable in that respect is Thorsdottir's interview of Ms. Combs, the clinical therapist who treated Doe in 2018 and who is referenced in the Department's initial 2018 report.  Combs relayed to Thorsdottir that Doe told her she was sexually abused by a "father of a friend" when she moved to a new neighborhood when 8 years old.  According to Combs, Doe also stated that her abuser's daughter's friendship was very important to her, as she was Doe's first friend in the neighborhood.  As a result, Doe would try to time her visits when the friend's father was not home.

In addition to those identifications, Detective Thorsdottir's interviews with Moretti and Doe's parents confirmed that Doe and Moretti's daughter were close friends during the relevant timeframe and that the two young girls spent a significant amount of time together.  Doe's family's home and Moretti's home were located in close proximity, and Thorsdottir had learned from her surveillance and online investigations that Moretti travelled often for work.  In light of these discoveries from several different sources over approximately seven months, we cannot say that the initial identification of the perpetrator as Doe's "father's friend" approximately a year earlier, or any of the other facts alleged in the Complaint are

---

[7] The Court recognizes Moretti's contentions regarding Doe's therapist being present and interacting with Doe throughout the interview.  Nevertheless, we cannot ignore that Doe specifically identified the same abuser that she named in residential treatment — the tip that prompted Detective Thorsdottir's investigation in the first place — or the timelines and details of the sexual assault that were corroborated throughout Thorsdottir's investigation.

sufficient to negate probable cause. It is well-established that "[r]easonable law enforcement officers are not required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established.'" *See Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) (quoting *Torchinsky*, 942 F.2d at 264). The probable cause bar is a low one, and the facts alleged by Moretti and the exhibits to the Complaint establish that Thorsdottir's investigation satisfied that standard.

Because Detective Thorsdottir's actions were supported by probable cause, Moretti cannot state a claim of a Fourth Amendment violation. Therefore, we are constrained to affirm the district court's dismissal of the federal malicious prosecution claim.

### B.

The Complaint also raises a malicious prosecution claim under the common law of Virginia. Under this theory of liability, the Complaint was obliged to plausibly allege "that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *See Lewis v. Kei*, 708 S.E.2d 884, 889 (Va. 2011). Because an essential element of a Virginia malicious prosecution claim is a lack of probable cause, and for the reasons discussed heretofore with respect to Moretti's federal malicious prosecution claim, Moretti has failed to state a claim of malicious prosecution under Virginia law. We must also affirm the district court's dismissal of the common law malicious prosecution claim.

IV.

Pursuant to the foregoing, we reject Moretti's appellate contentions and affirm the judgment of the district court.

*AFFIRMED*

THACKER, Circuit Judge, with whom Judge BERNER joins, concurring:

I readily concur in the well reasoned majority opinion. I write separately simply to clarify two points.

First, I want to set the record straight with regard to certain of the government's responses during oral argument as to why the case was dismissed. Specifically, the government appeared to lay the blame for the dismissal squarely and solely on the victim:

> Judge Thacker: Well, I assume the state thinks at least that they could not prove [the case] because they dismissed it.
>
> Govt: That's actually, I don't believe that's the reason why the case was nolle prossed. The case was nolle prossed according to my understanding and what you see in Exhibit I, which was attached to the amended complaint, the prosecutor nolle prossed the case because of her unwillingness to move forward with the case.
>
> Judge Thacker: Because of the victim's unwillingness to move forward with the case?
>
> Govt: Yes, your honor. Jane Doe no longer wanted to move forward with the case.

Oral Argument at 22:48–23:16, *United States v. Moretti*, No. 23-1547 (4th Cir. May 6, 2025), https://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. In fact, the first paragraph of Exhibit I to which the prosecutor referred states:

> . . . I have been made aware of the falsity of an argument that I made during the motions regarding the victims [sic] medical records . . . I previously believed that in 2018, the victim had not named another individual as her abuser for the pending charges. . . . and argued as such. These messages clearly show the victim naming another individual besides the defendant as her abuser in detail in June of 2018.

J.A. 88.

21

To be sure, the exhibit also indicates that the victim no longer wished to proceed. *Id.* ("The victim is no longer willing to go forward with the prosecution.") But, in my view, the government attorney clearly sought to leave the impression during oral argument that it was solely the victim's decision to not pursue the case -- even when I suggested that the case was dismissed because the government could not prove it. That posture is not only unfair to the victim and to Appellant, it is inaccurate. As the Prince William Commonwealth's Attorney herself said, "Sometimes as a case progresses and more information is learned, that information is favorable to the defense. That is what happened in this case. When we became aware of that new information, we discussed it with the victim and based upon our discussions, **we concluded that we were unable to prove the case beyond a reasonable doubt.**" Tom Jackman, *Charges Dropped Against Former State Department Official Arrested on Child Molestation Charges*, The Washington Post (March 22, 2022), https://www.washingtonpost.com/crime-law/2020/05/07/former-top-state-department-official-arrested-child-molestation-charges/ [https://perma.cc/AJ33-3HAV] (emphasis supplied).

Next, the opinion in this case uses the term "child pornography." That is understandable inasmuch as that is the terminology used in the Virginia statute at issue. But, that terminology is universally out of favor. And for good reason. That term implies consent, and pornography is largely legal when it involves consenting adults. Children, of course, cannot consent to sexual activity or their exploitation, and pornography is criminalized when children are the subjects. Referring to child sexual abuse material as pornography minimizes the actual crime and the impact it has on children.

22

For this reason, the current practice among professional organizations that work on behalf of child victims of sexual exploitation is to use the term "child sexual abuse material" and they strongly urge others to do so as well. *E.g.*, *What Is Child Sexual Abuse Material*, RAINN (Rape, Abuse & Incest National Network) (Aug. 25, 2022), https://rainn.org/news/what-child-sexual-abuse-material-csam [https://perma.cc/N7KW-KHQD]. In fact, the Department of Justice itself has explained that although the term "child pornography" appears in some federal and state statutes (as it does here), the term "'child sexual abuse material' is preferred, as it better reflects the abuse that is depicted in the images and videos and the resulting trauma to the child." Child Sexual Abuse Material, U.S. Dep't of Just. 1 (June 2023), https://www.justice.gov/d9/2023-06/child_sexual_abuse_material_2.pdf [https://perma.cc/LM7F-EYNW]. And although not yet adopted by Congress, the Department of Justice has made legislative proposals that suggest that the term "child pornography" be replaced throughout the United States Code with "child sexual abuse material." *Id.* at 15. Moreover, the Department of Justice has noted that in 2016, "an international working group, comprising a collection of countries and international organizations working to combat child exploitation, formally recognized "child sexual abuse material" as the preferred term." *Id.* at 1.

Therefore, regardless of the inaction of Congress in this regard, I would follow the lead of child advocates around the globe and acknowledge the alleged crime here for what it is—the sexual abuse of a child. Toward that end, I would use the preferred terminology "child sexual abuse material." *See, e.g. United Staes v. Kuehner*, 126 F.4th 319, 322 n.1

23

(4th Cir. 2025); *United States v. Krueger*, 145 F.4th 460, 462 n.1 (4th Cir. 2025); *United States v. Ray*, 141 F.4th 129, 131 n.1 (4th Cir. 2025).